THE CITY OF MOLINE, Appellee, *vs.* THE CHICAGO, BUR-LINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed February 21, 1914.*

1. WORDS AND PHRASES—*the words "court" and "judge" do not always mean the same thing.* The words "court" and "judge," while sometimes used synonymously, do not always mean the same thing, and the jurisdiction of a court to hear and determine matter and the eligibility of a judge to hold that court are entirely different matters.

2. CONSTITUTIONAL LAW—*act relating to death or resignation of county or probate judge is valid.* The act of 1885, as amended in 1899, authorizing the county clerk, in case of the death, resignation or inability of the judge of a county or probate court, to designate and call any county or probate judge to hold such county or probate court, has no relation to nor effect upon the jurisdiction of such courts, and is not unconstitutional, as attempting to enlarge the jurisdiction of probate courts.

3. COURTS—*when probate judge may be called to preside in the county court in special assessment proceeding.* Under the act of 1885, as amended in 1899, it is lawful, in case the judge of the county court in which a special assessment proceeding is pending has resigned his office, for the county clerk to designate the probate judge of such county to preside over the county court during the period the office is vacant, and he may, in such case, hear and determine the special assessment proceeding so pending.

4. SPECIAL ASSESSMENTS—*proof of publication of notice of confirmation—how made.* Proof of the publication of the notice of confirmation provided for in section 44 of the Local Improvement act must be made in accordance with section 1 of the statute relating to notices; and said section 1 is not changed by the act of 1909, providing that the newspaper in which a legal notice is published must be held to mean a newspaper which has been regularly published for at least six months prior to the first publication of the notice, but it is proper to include in the certificate of publication a statement that the newspaper has been regularly published for such period, and such statement, if untrue, may be contradicted in a proper manner the same as any other fact.

5. SAME—*when court should set aside default and permit objections to be filed.* In a special assessment proceeding the court should permit a default to be set aside and objections to be filed where the motion is made but three days after the default was entered and the

affidavits in support of the motion show that the objector has a meritorious defense to the whole or a material part of the assessment and that under the circumstances there is a reasonable excuse for suffering the default.

APPEAL from the County Court of Rock Island county; the Hon. BENJAMIN S. BELL, Judge, presiding.

J. A. CONNELL, and WALKER, INGRAM & SWEENEY, for appellant.

JAMES M. JOHNSTON, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

·This is an appeal from a judgment against certain property of the appellant, the Chicago, Burlington and Quincy Railroad Company, rendered in a special tax proceeding brought by the city of Moline for the assessment of the cost of paving Third avenue, in said city. The petition was filed in the office of the clerk of the county court on June 13, 1913, and presented to the Hon. Benjamin S. Bell, probate judge of Rock Island county, who had been requested by said clerk to organize and hold the June term, 1913, of said county court, the regularly elected county judge of said county having resigned. Judge Bell, as acting judge of said county court, granted the prayer of the petitioner and directed the commissioner appointed to make an assessment of the cost of said improvement by special taxation, as provided by the ordinance. Said commissioner on the same day filed his assessment roll, and the court ordered that objections to such assessment be filed by July 5 thereafter. On July 5 the commissioner filed with the clerk of the county court his affidavit of mailing and posting notices, to which he attached copies of such notices, and also a certificate of publication of a like notice for five days, the last publication being on June 18, 1913. On the same day the court, upon such affidavit of mailing, posting and publish-

ing of said notices, entered an order confirming such assessment roll. On July 8 the appellant filed its motion with the clerk asking to have said order of confirmation set aside and to be allowed to file objections to the assessment roll, alleging that it had not had sufficient time between the time application for confirmation was served on it and July 5, 1913, to investigate and determine with reference to said proceeding or how it affected its property; that its right of way which was assessed consisted of a narrow strip 1046 feet long and just wide enough to lay one railroad track upon it; that it was used for a main track; that the assessment of $4569.25 against the same as abutting frontage was wrong and erroneous, in excess of any possible benefit its property would receive from such improvement, and was grossly excessive and unreasonable; that the freight yards and freight house of the Chicago, Rock Island and Pacific Railway Company lay immediately south of said avenue, and that it had a meritorious defense to such assessment. The court denied said motion of appellant and refused to set aside the order of confirmation as to its property, to which appellant excepted and thereupon prayed an appeal and perfected its appeal to this court.

Three causes for error have been assigned: First, that the probate judge of the county had no constitutional right or authority to hold the term of the county court in which the proceedings were had; second, that the service by publication was insufficient to give jurisdiction; and third, that the default and order confirming such assessment should have been set aside on the application of appellant.

As to the first assignment of error, paragraph 239*a* of chapter 37 of Hurd's Statutes of 1911 is as follows: "That in case of the death, resignation or inability of the judge of a county or probate court, of any county, the clerk of such court shall designate and call any county or probate judge to hold such county or probate court; and such county or probate judge, when so designated and called, may hold

such county or probate court and perform all the duties of
the judge thereof until the appointment or election of his
successor, or until the disability to act ceases." Appellant
contends that this section is unconstitutional for the reason
that the jurisdiction of probate courts is fixed by the con-
stitution, and that it is, in effect, an attempt to enlarge the
jurisdiction of the probate courts and give them powers
and jurisdiction in a class of cases not authorized by sec-
tion 20 of article 6 of the constitution of 1870, by which
probate courts are created.  Section 20 reads as follows:
"The General Assembly may provide for the establishment
of a probate court in each county having a population of
over 50,000, and for the election of a judge thereof, whose
term of office shall be the same as that of the county judge,
and who shall be elected at the same time and in the same
manner.  Said courts, when established, shall have original
jurisdiction of all probate matters, the settlement of estates
of deceased persons, the appointment of guardians and con-
servators, and settlement of their accounts; in all matters
relating to apprentices, and in cases of the sales of real
estate of deceased persons for the payment of debts."

The jurisdiction of probate courts, and the statutory en-
actments in regard thereto, have been before this court sev-
eral times.  In the case of *Knickerbocker* v. *People,* 102
Ill. 218, we decided that the act of the General Assembly
of 1877, as amended by the act approved May, 1881, in
force July, 1881, the first section of which established pro-
bate courts in each county of the State which had a popu-
lation of 70,000 or more, was constitutional and valid, and
that the probate court of Cook county, established under
that act, was a lawfully existing court.  In the later cases
of *In re Estate of Mortenson,* 248 Ill. 520, and *Frackelton*
v. *Masters,* 249 id. 30, this court defined the jurisdiction
of the probate courts, and held that the legislative enact-
ment of 1909, (not the enactment under consideration,)
in so far as it attempted to extend the jurisdiction of pro-

bate courts to include the supervision and control of testamentary trusts created by original wills, was invalid. Under the constitution a probate court would have no jurisdiction in a proceeding for the collection of taxes and assessments, and no attempt has been made to extend the jurisdiction of probate courts to such matters by legislative enactment. The county courts of the respective counties have jurisdiction over such matters. The exact question to be determined is whether the law of 1885, as amended by the law of 1909, authorizing the probate judge of a county to hold the county court of the county in case of the death, resignation or inability of the judge of the county court of said county, is constitutional.

Counsel for appellant insist that the terms "court" and "judge of the court" are the same thing and have the same meaning. But this is not always correct. It is true that the words "court" and "judge," as used, are synonymous, and the judge of a court, when presiding or holding court, is by common usage referred to as the court, but the jurisdiction of a court to hear and determine a matter and the eligibility of a judge to hold that court are entirely different propositions. "A court may be more particularly described as an organized body with defined powers, meeting at certain times and places for the hearing and decision of causes and other matters brought before it, and aided in this, its proper business, by its proper officers, viz., attorneys and counsel to present and manage the business, clerks to record and attest its acts and decisions, and ministerial officers to execute its commands and secure due order in its proceedings." (Black's Law Dict. 287, quoting Burrill.) By the same authority a judge is defined as "a public officer appointed to preside and to administer the law in a court of justice; the chief member of a court, and charged with the control of its proceedings and the decision of questions, of law or discretion." These definitions are those generally given by lexicographers. Generally speaking, the judge,

while an indispensable part, is after all only a part of a court. The various courts are created and their powers and jurisdiction are defined by the constitution, and the details of establishing the courts, providing for terms, clerks and other officers, salaries, and other matters necessary to constitute a complete court, are left to the legislature. Thus, while probate courts are created by the constitution it is left for the legislature to establish those courts, which has done so by the law of 1877 as amended by the law of 1881. It was not until after the legislative enactment that such courts, with clerks and other officers, were established. Under the constitution a probate court is established in each county having a population of over 70,000. The constitution has also prescribed the qualifications of judges of the courts so created. So that, so far as we are advised by the record, there was a county court fully and lawfully established in the county of Rock Island, and there was also a probate court established in that county. The person who had been elected judge of the county court had resigned, but that did not have the effect of abolishing the county court.

The petition for the spreading of the tax was duly filed in the county court with the clerk thereof and stood for hearing in that court. Of course, there could be no session of the court without a judge. The law provides "that in case of   *   *   *   the *resignation* of the judge of a county or probate court of any county, the clerk of such court shall designate and call any county or *probate judge* to hold such county or probate court." It is true that the jurisdiction of the probate courts as created by the constitution is not co-extensive with or as large as the jurisdiction of county courts, but there is not such a difference in their jurisdiction that the language we have just quoted, providing for the interchange of county or probate judges in certain cases, is contrary to section 29 of article 6 of the constitution, that "all laws relating to courts shall be gen-

eral, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

The jurisdiction of probate courts by the constitution extends to a class of subjects, in counties of 70,000 population or more, which are within the jurisdiction of county courts in the other counties. The purpose of the constitution creating probate courts was evidently to relieve the county courts of the business which would necessarily come to those courts with the increase of population and the consequent increase in probate business. The statutory enactment establishing such courts is similar to the statute establishing county courts. Both the county judge and the probate judge in counties where probate courts are established are elected at the same time, for the same term, and their qualifications are the same. Anyone who is eligible to the office of probate judge is eligible to the office of county judge, and *vice versa.* The jurisdiction of each is co-extensive with the county, and, as we have seen, when a probate court is established it takes jurisdiction from that time on of certain matters which before that time were under the jurisdiction of the county court. The section of the statute providing that the judge of one court shall hold the other court in case of the death, resignation or inability of the judge thereof is a general law and of uniform operation. The act in question was originally passed in 1885. It was amended to its present wording in 1899. The original act provided "that in case of the *absence,* death, resignation or inability of a judge of a county or probate court of any county, any county or probate judge may hold such county or probate court, and perform all the duties of the judge thereof, until the return of such judge, the appointment or election of his successor, or until the disability to act ceases."

In the case of *Pike* v. *City of Chicago,* 155 Ill. 656, it was argued by lawyers of ability that the enactment of this law by the legislature in effect repealed the law of 1879, which provided that the county judges of the several counties of this State, with like privileges as the judges of the circuit courts of this State, may interchange with each other, hold court for each other, and perform such other duties when they find it necessary or convenient. It seems that counsel in that case contended for exactly the opposite construction of the law that is contended for by counsel for appellant in this case. Counsel for appellant insist that it was the duty of the county clerk to call the county judge of some other county. Counsel in the *Pike case* contended, under similar circumstances, that it was the duty of the county clerk to call in, not some outside county judge, but the probate judge of the county to preside over the county court. In the *Pike case* the court, referring to the act of 1885 allowing probate and county judges to hold each other's courts, said: "Prior to 1885, when a county or probate judge had died or had resigned, or when there was some sudden inability which might impair the mental powers of the judge, there was no statute under which the court could be held by a judge from another county until the difficulty could be removed. This act was intended to remedy this supposed defect in the statute *and also make provision under which probate judges might hold county court and county judges hold probate court.* This, as we understand the statute, is its real scope and purpose. Where the county judge was dead, or had resigned, or was afflicted with some malady, so that he could not call upon a judge from another county to come to his assistance, as might be done under the act of 1879 where the judge was in the discharge of his duties and desired assistance, it was very proper that the legislature should enact a statute to remedy the supposed evil. The third section of the act [reciting the death of a judge and that an emergency existed] shows plainly enough

the purpose of the act. There had been a death, and the legislature thought it wise to enact a law so that court might be held until a successor could be elected by the people. But this act in no respect changed the act of 1879, but left it in full force as it was enacted." In a dissenting opinion filed by Mr. Justice Magruder this same law of April 10, 1885, is quoted as sustaining the conclusion raised in the dissenting opinion, that it is only in the case of the absence of a county judge from his county that another county judge may hold his court until the return of the resident judge. It is true that the same question was not involved and what was said in that case was *obiter*, but the section of the statute in question seems to have been considered and recognized as a valid enactment without question.

In the case of *American Car Co.* v. *Hill*, 226 Ill 227, this court held that under the statute (Hurd's Stat. 1911, sec. 1, p. 699,) providing that judges of city courts may interchange with each other and with the judges of the circuit court, the judge of the city court of Alton was qualified to preside as judge in the circuit court of Madison county; that where a change of venue was sought on the ground of prejudice from the judge or judges of the court wherein the case was pending, there was no occasion to send the case out of the county for trial if a judge (judge of the city court) not disqualified by the application for a change of venue can hold, or is holding, a term of said court in the county in which the suit was brought; nor is the fact that the case was not sent to some other county a ground for reversal. That decision was quoted with approval in the case of *American Badge Co.* v. *Improvement Ass'n*, 246 Ill. 589, which held that section 13 of the Municipal Court act, providing that judges of said municipal courts may interchange with judges of other city courts and with county judges, was valid and constitutional.

In *Jones* v. *Albee*, 70 Ill. 34, it was held that the enactment of May 3, 1873, providing that any judge or judges

of the circuit court of Cook county may assist any judge of any other court of record on request and hold a branch court, was not in violation of the provision of the constitution which requires each circuit judge to preside in the district from which he is elected. In the cases of *Hall* v. *Hamilton,* 74 Ill. 437, *Bradley* v. *Barbour,* 74 id. 475, and *Wadhams* v. *Hotchkiss,* 80 id. 437, this statute was held constitutional.

The objection in the present case is to the judge of the probate court holding the county court. Anything that would disqualify the probate judge of Rock Island county from holding the office of probate judge might also disqualify him from acting for the judge of the county court of that county. But there is no claim that he was in any way disqualified as a judge. The constitutional restrictions as to jurisdiction apply to a court. We think the law of April 10, 1885, as amended by the enactment of April 24, 1899, is constitutional and valid.

As to the second point urged for reversal, it is claimed that the certificate of publication of the notice required to be given before confirmation is insufficient, in that there is no legal proof that the paper in which the notice was published had been regularly published for six months, etc. It was held by this court in *City of Chicago* v. *Stein,* 252 Ill. 409, that as the Local Improvement act contains no provision for proving the publication of the notice required by section 44 of that act, the proof must be made according to section 1 of chapter 100 of our statutes. By the law approved June 8, 1909, in force July 1, 1909, it was enacted that whenever it was required by law that "any legal notice or publication shall be published in a newspaper, it shall be held to mean a newspaper that has been regularly published for at least six months prior to the first publication of said notice." This did not change section 1 referred to. It has always been necessary to state in the certificate of publication certain things to show

that the law had been complied with, such as the number of publications and the dates of the first and last publications, and since the enactment of the law of 1909 it has been customary and is proper to also include as a part of the certificate that the publication was in a paper that had been regularly issued for more than six months prior to such publication. This statement is jurisdictional, and it could be contradicted in the proper manner, like any other fact, if it were not true. We have examined the notice and certificate of the publisher as set out in full in the record, and think that the notice and certificate were sufficient and that the certificate overcame the objections found to the publisher's certificate in the *Stein case*.

As to the third point urged for reversal, it appears that the assessment roll was returned and confirmed and judgment entered against the property of appellant on July 5. On July 8 the appellant made a motion that the order of July 5 confirming the assessment roll as against it and its property be set aside so far as appellant and its property is concerned, and that it be given opportunity and allowed further time to file objections to such confirmation of said assessment roll, for the reasons, first, that it did not have sufficient time between the notice of the application for confirmation and July 5 to investigate and determine with reference to said proceedings as a whole, and with reference especially to the same as it affected and related to petitioner and its property; second, that petitioner immediately on receipt of notice of such application began inquiry concerning such application, to determine the legality, accuracy and justice of such proceeding and assessment roll as affecting its interests and property and has diligently pursued the same, but has been unable to complete such investigation and examination in time to get its objections on file by July 5, 1913; third, that the petitioner is assessed more and on a greater frontage than anyone else along the line of the improvement, being assessed $4569.25 on a frontage of 1046

feet used for right of way, the greater part of which is of a width sufficient to accommodate but one railroad track, and it believes the assessment to be entirely erroneous and in excess of any benefit said property will receive from said improvement.

The affidavit of John J. Ingram, one of the solicitors for appellant, states that said company determined, after investigating said proceedings, to object to the confirmation of the assessment roll, and his firm were to have had instructions relative thereto from the officers of the company in Chicago by July 5, 1913, in time to file such objections, but owing to a holiday, the 4th of July intervening, when mail was not handled or delivered, and the 5th of July being followed by Sunday, when no mail was delivered, instructions to the affiant's firm were unavoidably delayed and were not received by them until Monday, July 7, too late to file objections; that he is fully advised with reference to the situation, and believes said railroad company has a good and meritorious defense and has valid and material objections to the confirmation of said assessment roll; that there is a question whether or not the right of way so assessed, or a part of it, is not in the avenue itself, set apart for railroad purposes, and other and adjacent property than such right of way should be assessed on account of said improvement; that the amount assessed is grossly excessive and far beyond any possible benefit or advantage that could be received from such improvement; that owing to the peculiar situation of the property and the questions involved his firm had not been able to properly determine with reference thereto or complete preparations of objections by July 5, and if the confirmation were set aside and appellant allowed to file objections it will result in the assessment of appellant's property being eliminated or greatly reduced. The affidavit of Hugh W. Crawford, division freight agent of the company, was also filed, said affidavit alleging, in substance, that the property assessed is

a narrow strip used as a right of way, sufficient only for one track, which is a main track; that it appears to affiant as though a part of said strip at places may be in the avenue as originally laid out; that no buildings or yards are maintained there; that next south of said strip, and for a good part of its length, are the freight yards and freight house of the Chicago, Rock Island and Pacific Railway Company, separated from the traveled way in said Third avenue by a narrow strip used as right of way by affiant's company; that he believes the assessment to be entirely erroneous and largely in excess of any benefit which it will properly receive from said improvement; that the 4th day of July (a legal holiday) was the day prior to the time set for the confirmation of the assessment roll; that he knows the general offices of the company where this matter had been receiving attention were closed on that day, and this is one reason why the matter of appearing and filing objections to said assessment roll was not attended to so as to have said objections on file by July 5 last.

It appears from the motion, and the affidavits in support of the same, that counsel for appellant had diligently investigated the matter of this assessment with the view of ascertaining if appellant had a legal defense to the assessment under the circumstances, and intending, if the investigation disclosed it had such defense, to file objections in support of the same. As appears by the motion and these affidavits, which we must take as true, the situation of the property of appellant which was taxed for this pavement is unusual. It was a narrow strip adjacent to the street, and perhaps partly in the street. Appellant is assessed a large amount, and it can readily be seen that complicated questions were involved. From the affidavits on file it would seem that the local officers and counsel for the appellant had pursued their investigations with diligence and in good faith, and that the officers of the appellant company who had charge of this matter desired, if they did defend at all,

to put in a defense that was not frivolous or technical but one that would be meritorious. Undoubtedly, it would save . time for all parties in interest to devote sufficient time to the examination of these matters, so that if appellant did file objections it would file objections that would be to the merits and to the justice of the assessment. The appellant is a railroad corporation, conducted as such corporations usually are. Its business was in the hands of the officers of its various departments. It was necessary to report to these officers and get their instructions.· The matter was submitted to the officials of the company at headquarters, and but for the fact that the hearing was set for the 5th of July, which was the day following the national holiday, when the general offices of the company were closed and mail was not handled by the postal authorities, full instructions as to the matter would undoubtedly have been received by the local officers and counsel for the company and proper objections would have been filed in time. The entire record shows that these proceedings were rushed through the court in an unusually short time. The record shows that the commissioner who was appointed to spread the assessment made his report of the assessment covering several blocks on the same day that he was appointed. The motion to set aside the judgment was made as soon as counsel heard from the head officers of the company, and, so far as the record shows, before any rights had intervened which would make it unjust to grant the motion. The appellant showed by its motion that under the circumstances it had been diligent, that it had a meritorious defense, and that substantial injury would result from a refusal to grant the motion. Under the long and well settled practice in this State the courts have been liberal in setting aside defaults at the term at which they were entered when it appears that justice will be promoted thereby. When it appears by the affidavit filed in support of the motion that the party has a defense to the merits, either to the whole

262 — 5

or a material part of the cause of action, it has been usual to set aside the default if a reasonable excuse is shown for not having made the defense.  (*Mason* v. *McNamara,* 57 Ill. 274.)   We think that under the circumstances appel-lant should have been allowed an opportunity to file objec-tions and have a trial on the merits of same, and that it was error not to grant the motion.

For the reasons given, the judgment of the county court of Rock Island county will be reversed and the cause re-manded to said court, with directions to set aside the judg-ment.against the property of appellant and allow it to file objections to the confirmation of said tax:

*Reversed and remanded, with directions.*