Freeman A. Dalton, Eleanor M. Dalton, Lon Dean Dalton, a Minor, by Freeman A. Dalton, His Father and Next Friend, and Linda Jean Dalton, a Minor, by Freeman A. Dalton, Her Father and Next Friend, and Linox Welding Supply Company, Plaintiffs-Appellees, v. John C. Alexander, H. R. Alexander, and Service Motor Corporation, Defendants-Appellants.

Gen. No. 10,061.

Third District.

May 14, 1956.

Rehearing denied June 18, 1956.

Released for publication June 18, 1956.

Earl S. Hodges, of Springfield, and McLeod, Donahue & Colwin, of Fond du Lac, Wisconsin, for defendants-appellants; Duane L. Traynor, of Springfield, of counsel.

Livingstone, Mueller, Drake and Davlin, of Springfield, and Giachini, Ley and Cross, of Chicago, for plaintiffs-appellees.

JUDGE CARROLL delivered the opinion of the court.

This is an action to recover for personal injuries and property damage resulting from an automobile collision which plaintiffs allege was caused by the neglect and wilful and wanton misconduct of the defendant, John C. Alexander.

The accident occurred on April 13, 1953. On April 12, 1955, the complaint was filed and on the same date summons returnable May 16, 1955 was personally served upon John C. Alexander and upon H. R. Alexander and Service Motor Corporation, nonresidents of Illinois by filing copies thereof with the Secretary of State of Illinois. On May 18, 1955 an order of default was entered as to all defendants for failure to appear

or answer the complaint. On July 18, 1955, a jury demand having been withdrawn, the court heard the evidence offered on behalf of the plaintiffs and on July 26, 1955 judgments for the several plaintiffs were entered as follows: Freeman A. Dalton, $10,150; Eleanor M. Dalton, $2,000; Lon Dean Dalton, a minor, by Freeman A. Dalton, his father and next friend, $3,000; Linda Jean Dalton, a minor, by Freeman A. Dalton, her father and next friend, $500; and Linox Welding Supply Company, an Illinois Corporation, $360.

On July 11, 1955 the defendants filed their respective petitions supported by affidavits to vacate the default judgment and order of default or in the alternative to open the default judgment and for leave to answer and defend the cause on its merits. No counter-affidavits were filed.

The petitions came on for hearing on September 6, 1955 and, so far as the record discloses the court heard no evidence and the matter was taken under advisement and continued to September 27, 1955. On September 16, 1955, plaintiffs filed a motion to dismiss defendants' petitions and also filed therewith a brief of law and argument in support thereof. No disposition was made of the plaintiffs' motion. On September 27, 1955 the defendants' petitions were denied and this appeal followed.

The collision occurred on April 13, 1953 at 11 o'clock A. M. at the intersection of U. S. Route 66 with Moorehead street, a road leading into Chenoa, Illinois to the East. The weather was fair and the pavement consisting of two lanes, was dry. Plaintiff Freeman A. Dalton was driving a Buick automobile owned by Linox Welding Supply Company, North on Route 66. His wife and two minor children were riding with him. John C. Alexander, accompanied by his wife Evaline was proceeding South on said highway in a Ford car owned by Service Motor Corporation. The complaint alleges that John C. Alexander was driving and operating the

276

Ford automobile for his own pleasure and benefit as agent or servant of H. R. Alexander and Service Motor Corporation, or in the alternative, Service Motor Corporation was the owner of said Ford automobile which H. R. Alexander and Service Motor Corporation by their, his, or its agent or servant, John C. Alexander, drove.

The plaintiff's version of the actual occurrence as it appears from the testimony of Freeman A. Dalton is that he approached the Moorehead street intersection at a speed of approximately 45 or 50 miles per hour; that there was no traffic preceding him; that the Ford car driven by John C. Alexander was coming toward him; that about the time he was 20 feet from the intersection, Alexander started turning into the intersection; that Alexander was then about 10 feet from the intersection; that plaintiff was unable to stop; that he tried to miss defendant's car by swerving to the left; that plaintiff's car went into a field or ditch.

The affidavit of John C. Alexander filed in support of his verified motion recites in substance that the Ford automobile in which he and his wife were riding at the time of the collision was loaned to him by Service Motor Corporation for his personal use and pleasure; that it was then being driven for the convenience of he and his wife and was not being used for or on behalf of any other person; that as he approached the intersection of Moorehead street with Route 66, he desired to make a left-hand turn; that he saw the Dalton Buick car approaching at a distance of 600 to 700 feet to the South; that he turned on his directional light indicating a left turn; that he considered he had ample time to make the turn safely; that he did turn and reached the point where his automobile was entirely off the paved portion of the highway; that the Buick automobile when 100 feet from the intersection, left the pavement to its right and continued along the shoulder on the East side of the paved portion of the highway and

struck with its right rear against the right rear of the Ford; that the Buick continued across Moorehead street and came to a stop in a field; that when it entered the intersection the Buick was travelling 60 to 70 miles per hour and was skidding along the East shoulder of Route 66; that on the day of the accident he telephoned his son, H. R. Alexander at Fond du Lac, Wisconsin and told him of the occurrence; that on April 13, 1955 he and his wife were preparing to go to the home of a daughter in State Line, Indiana who was seriously ill and about whose condition he was worried and nervous; that he did not understand the meaning of the summons served upon him and had never been involved in any court proceedings; that he talked with the clerk of the circuit court about the matter and told him of his anxiety about his daughter's condition; that he could only recall that the clerk said it was probably someone wanting to get some easy money; that on April 13, 1955 he telephoned the Lumbermen's Mutual Casualty Insurance Company at Peoria and talked with a man whose name he did not know; that he told this man that he had received notice of suit; that he was told by the man with whom he talked that there was nothing he had to do; that the Insurance Company office had a record of the matter and would take care of it and that he had no cause to worry; that he thereafter assumed the Insurance Company knew of the suit and further assumed that H. R. Alexander, his son, had advised the Company of the suit; that he heard nothing about the matter until July 27, 1955 when he read an article in a Springfield newspaper to the effect that a judgment had been taken against him; that prior to reading the newspaper article at no time did he know that the cause had not been answered or that a judgment was to be taken against him; and that he retained no one to represent him as he believed the Insurance Company would look after his interests.

The affidavit of H. R. Alexander states that he is a son of John C. Alexander and resides at Fond du Lac, Wisconsin; that his father is 72 years of age and lives in Springfield, Illinois; that the Ford automobile which John C. Alexander was driving on April 13, 1953 was the property of Service Motor Corporation of Fond du Lac, Wisconsin; that said automobile was loaned to John C. Alexander and Evaline Alexander for their personal use; that on or about April 13, 1953, John C. Alexander informed him by telephone that the said automobile had been involved in an accident near Chenoa, Illinois on U. S. Route 66; that thereupon he notified the Dana Insurance Agency of Fond du Lac, Wisconsin of the accident; that said Agency was handling the insurance coverage on the Ford automobile involved in the accident; that Edward W. Dana, representing the Agency prepared a notice of the accident and advised affiant that the same would be transmitted to Lumbermen's Mutual Casualty Insurance Company; that nothing came to his attention relative to the claim until April 8, 1955 when he received a letter from John C. Alexander in which the father advised that he had received demands and calls from one Sylvester Carter, an attorney in Springfield, Illinois; that affiant wrote Carter suggesting that Lumbermen's Mutual Casualty Insurance Company at Peoria be contacted; that affiant then heard nothing further concerning the matter until April 16, 1955 when he received a copy of the summons by mail; that upon receipt of said summons affiant called Edward W. Dana by telephone and informed him of the receipt of the summons; that Dana stated the matter had been reported to the Insurance Company and the same would be given proper attention; that affiant also talked with his personal attorney who informed him there was nothing he need do so long as he had referred the matter to his Insurance Company and had the assurance of the Company that it would

279

look after the matter; that he heard nothing further concerning the claim until July 29, 1955 when he received a letter from his father notifying him of the judgment; that he was then unable to locate Edward W. Dana but did call the Insurance Company office at Peoria and was informed that the Company had no knowledge of the judgment.

The affidavits of R. J. Hammond, claims adjuster and claims supervisor for the Insurance Company and Howard A. Ideson who was a claims supervisor for the Company were also filed in support of the motions. The substance of the recitals in these affidavits are that the Peoria office of the Company received notice of the accident on April 17, 1953 from its Oshkosh, Wisconsin claims office; that on May 4, 1953 the claim was assigned to John T. Burke, a company adjuster; that on June 1, 1953 the Chicago office of the Company received a letter from a law firm representing plaintiffs addressed to John C. Alexander at Springfield; that this letter suggested an attempt to settle plaintiffs' claims without court action; that on December 18, 1953 the claim was reassigned to Hammond; that during the period from December 18, 1953 to April 4, 1955 there were numerous contacts between Hammond and Brennan then representing the plaintiffs in an effort to effect a settlement of the claim; that although requested to do so several times, plaintiffs failed to furnish the adjuster with a statement of the special damages claimed; that the amount of the doctor bills for the Dalton family was $169.50 with $125 expended by them for X-rays; that Freeman A. Dalton claimed to have been totally disabled for two and one-half weeks and partially disabled for an additional three weeks but gave no estimate as to his loss of earnings; that Brennan asked $2000 in settlement of the case, which demand was later reduced to $1500; that Brennan said he thought he could get his clients to take $1000; that the last negotiations concerning a settlement took place

on April 4, 1955 at which time the adjuster suggested to Brennan that a figure of $750 would be considered by the Company; that Brennan told Hammond that the offer was not acceptable and that he would refer the matter for suit to some attorney in Springfield and that at that time Hammond was given the impression by Brennan that no steps had been taken towards the filing of a suit; that on April 13, 1955 Ideson received a call from John C. Alexander and concluded that his call related to a demand made on him by the attorney for plaintiffs and that no suit had been filed.

An affidavit by Kenneth McLeod, an attorney, recites that H. R. Alexander sent him a copy of the summons on April 20, 1955; that affiant called the Dana Insurance Agency and inquired whether Lumbermen's Mutual Casualty Insurance Company had arranged to defend the action; that he was informed by the Agency that such arrangements had been made; that affiant then wrote H. R. Alexander to the effect that there was nothing further for him to do since the matter had been referred to the insurance carrier.

Summarized, the recitals of the affidavits show that H. R. Alexander notified the insurance agent at Fond du Lac, Wisconsin of the filing of the suit; that the agent assured H. R. Alexander and his attorney that Lumbermen's Mutual Casualty Insurance Company would look after the defense of the action; that the attorney for H. R. Alexander after contacting the insurance agent advised him there was nothing further for him to do concerning the matter since the same had been referred to the insurance carrier; that John C. Alexander on April 13, 1955, notified the Peoria office of the Insurance Company that he had received notice of the suit; and that the company adjuster did not understand the telephone call of John C. Alexander referred to a pending suit but was under the impression that the notice referred to a demand for settlement made by an attorney.

The Civil Practice Act provides that the court may in its discretion after final judgment set it aside within 30 days upon good cause shown. Chap. 110, Par. 174(7), Ill. Revised Statutes, 1953. The motions in this case were filed within such 30-day period.

 In considering the propriety of an order denying a motion to set aside a default, certain general rules must be accorded recognition. As to whether or not such a motion should be allowed rests in the sound legal discretion of the court to which it is addressed depending upon the facts presented. People ex rel. Elliott v. Benefiel, 405 Ill. 500; Village of LaGrange Park v. Hess, 332 Ill. 236. It is only where there has been an abuse of discretion that a reviewing court will interfere. Busser v. Noble, 8 Ill.App.2d 268. Such a motion must show that the party making the same acted with due diligence to protect his rights and that he has a meritorious defense. Nitsche v. City of Chicago, 280 Ill. 268.

In this State, courts have been liberal in setting aside defaults at the term at which they were entered. That such practice has generally prevailed has been acknowledged in many cases and in City of Moline v. Chicago, B. & Q. R. Co., 262 Ill. 52, the Court said:

"Under the long and well settled practice in this state the courts have been liberal in setting aside defaults at the term at which they were entered when it appears that justice will be promoted thereby. When it appears by the affidavit filed in support of the motion that the party has a defense to the merits, either to the whole or a material part of the cause of action, it has been usual to set aside the default if a reasonable excuse is shown for not having made the defense."

The result obtained from the application of these rules depends upon the facts to which they are applied.

 The plaintiffs filed no counter-affidavits and accordingly the statements of fact in defendants' affida-

282

vits must be taken as true. Lane v. Bohlig, 349 Ill. App. 487.

In view of the allegations of fact appearing in the affidavits, we think the requirement that the existence of a meritorious defense must be shown has been fully met by the defendants.

■ The defendants contend that the judgments against H. R. Alexander and Service Motor Corporation should not have been permitted to stand because the Trial Court lacked jurisdiction to enter the same. Service upon these particular defendants was obtained pursuant to Sec. 23, Chap. 95½, Illinois Revised Statutes 1953, which reads in part as follows:

"The use and operation by any person of a motor vehicle over the highways of the State of Illinois, shall be deemed an appointment by such person of the Secretary of State, to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, . . ."

The fact that plaintiffs complied with this provision of the statute is not in dispute. However, defendants' affidavits recite that at the time of the accident John C. Alexander was not the servant, agent or employee of H. R. Alexander or Service Motor Corporation but was then driving an automobile loaned to him by said H. R. Alexander and Service Motor Corporation for his personal use and pleasure. In testing the sufficiency of the motion, these affidavits must be taken to be true. When so regarded these facts make a prima facie showing that no agency relationship existed between John C. Alexander and the owners of the car which he was driving. If it be true as defendants claim that the use and operation of the automobile in question was by John C. Alexander as bailee then the so-called

283

"long arm" statute does not apply to these nonresident defendants. Jones v. Pebler, 371 Ill. 309.

Plaintiffs answer this contention of defendants by saying that since it is deemed that plaintiffs complied with the statute in question in obtaining service upon the nonresident defendants, the jurisdiction of the court to enter judgment against such defendants cannot be attacked by a motion such as defendants have made in this case. Admittedly, if the facts establish that the nonresident defendants are not persons amenable to process under the statute, then no service was had upon them and the judgments as to said defendants are void.

██ It follows, therefore, that the primary question before this court so far as the judgments against the nonresidents are concerned is their right to relief from such judgments by a motion made within 30 days after the entry of the judgments.

In Ellman v. De Ruiter, 412 Ill. 285, where the Supreme Court had under consideration a proceeding brought under Section 72 of the Civil Practice Act [Ill. Rev. Stats. 1953, Ch. 110, § 196] to set aside judgments entered more than 30 days prior to the filing of the petition to vacate such judgments, it was held that the application of equitable principles, when occasion demands, was permissible in determining whether the relief sought should be granted. Speaking with reference to the subject of the scope of the function of such a motion, the Court said:

"While our present Civil Practice Act has not effected a complete amalgamation of the practice and procedure in common-law and suits in equity in this jurisdiction, it is our opinion that there has been a fusion sufficient to enable a court of law, when the occasion demands it, to apply equitable principles in administering the summary relief available under the motion which has been substituted for writ of error coram nobis. Stated differently, it is our belief that

the motion may, under our present practice, be addressed to the equitable powers of the court, when the exercise of such power is necessary to prevent injustice."

In Lichter v. Scher, 4 Ill.App.2d 37, where one of the defendants sought to have a judgment set aside on the ground that no service of summons had been made upon it, the Appellate Court applying the principle announced in the Ellman case, held that a motion supported by affidavits under Section 72 of the Practice Act averring as it did that the defendants had not been served was addressed to the equitable powers of the court which would enable it to grant relief against a void judgment.

Under varying factual situations, we find similar holdings in Schnable v. Tuma, 351 Ill. App. 486; Admiral Corp. v. Newell, 348 Ill. App. 180; Lane v. Bohlig, supra.

■ In the instant case, the defendants seek the same relief which the court in the Lichter case held might be granted on a motion made under Section 72 of the Practice Act. The only distinction between the two cases appears to be the fact that defendants filed their motion and sought to have the judgments vacated within 30 days after their entry. We have discovered no case nor has any been called to our attention in which it has been held that a court may not apply equitable principles in passing upon a motion to vacate a judgment brought under Section 50 [Ill. Rev. Stats. 1953, ch. 110, § 174] of the Practice Act. The plaintiffs argue that since the ruling in the Ellman case was made in a proceeding brought under Section 72 of the Civil Practice Act, it is not applicable in cases where the motion is filed within 30 days and while the cause is still rightfully before the Trial Court. Such contention is not supported by any authority. There would appear to be no justification for holding that a court is without power to apply equitable principles in pass-

285

ing upon a motion to vacate a judgment simply because the defendants, in the exercise of diligence filed such motion within 30 days after the judgment was entered.

Since the averment that John C. Alexander was not the agent of the nonresident defendants must be taken as true, it follows that the Trial Court should have allowed the motions as to the nonresident defendants and permitted them to defend.

██ This leaves for consideration the question whether the Trial Court erred in denying the motion of John C. Alexander. As previously indicated herein, we believe this motion shows that he has a meritorious defense to the action. As to whether his motion should have been denied because of its failure to show that he was not guilty of inexcusable neglect depends entirely upon the facts appearing in the affidavits supporting such motion, which we are required to accept as being true. Both terms "excusable neglect" and "inexcusable neglect" have no fixed legal meaning, the question being one of fact depending upon the circumstances of each case. The question here as it is in every case where it is necessary to determine whether or not a person was negligent is whether such person was reasonably justified under the circumstances in acting as he did. Where the neglect of a person can be charged to a reasonable assumption that no action on his part is required, such failure to act is not inexcusable.

There appears to be no hard-and-fast rule by which a court may be guided in cases which require determination as to whether a person is, by his conduct, guilty of inexcusable neglect. As has been observed by reviewing courts on many occasions, determination must depend in each case upon the facts there presented. However, we think the reasoning of the court in the recent case of Busser v. Noble, supra, furnishes a guide which may be safely followed in deciding whether the motion of John C. Alexander is sufficient to establish that he was not guilty of the type of

neglect which bars him from the relief sought therein. In the Busser case, the defendant upon being served with summons delivered same to the office of the agency through which he had purchased an insurance policy; that he was advised by the agency that his interests would be protected; that he did not hear from the insurance company; that due to an error or mistake in the insurer's office the summons was not called to the attention of the claim agent resulting in a default judgment being taken against the defendant. Within 30 days thereafter, the defendant filed his motion supported by affidavits to set aside the judgments and for leave to plead. The trial court denied the motion. On appeal, the Appellate Court reversed the judgment. In so doing, the court made this observation:

"We recognize that where a party is served with process and fails to act from negligence or without any reasonable excuse, he has no right to insist that he be permitted to defend. In the instant case defendant paid attention to this summons. He did not treat it with indifference. He did just what the ordinary individual would do. He delivered it to the agent of his insurance carrier. He thereafter made repeated inquiries concerning it and was assured his interests would be taken care of. His conduct was not inexcusable. The power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and the furtherance of justice. (31 Am. Jur. 279). The question in the instant case is whether defendant was reasonably justified under the circumstances in relying upon the promise or statements of his insurance agent. We think he was. His neglect to attend to the matter himself was not inexcusable."

 We consider the above language applicable to the instant case. It is true that the defendant did not make repeated inquiries as to whether the Insurance

Company had arranged for a defense of the action against him, however, he did contact the office of the Insurance Company and not an insurance broker on the day the summons was served upon him. He did not ignore the summons. He received assurance that the Company would take care of the matter. He knew that the automobile was insured with Lumbermen's Mutual Casualty Insurance Company and it would be reasonable for him to assume that the Insurance Company had been advised of the suit by H. R. Alexander, since the Company told him on April 13 that they had a record of the matter. We think that the conduct of John C. Alexander did not differ from that of any ordinary person under like circumstances. We do not think the unexplained failure of the Insurance Company to take care of the matter as they were required to do should be charged against John C. Alexander as inexcusable neglect. At least there would appear to be a reasonable doubt as to whether this defendant was guilty of inexcusable neglect. In such a case and where as here there has been no trial on the merits the court's discretion is usually exercised in favor of granting the motion and permitting the defendant to answer. 31 Am. Juris., Par. 717.

 Considering all of the circumstances as revealed by defendants' affidavits and bearing in mind defaults are not encouraged and that the provisions of the Civil Practice Act should be construed liberally, we have reached the conclusion that in the exercise of sound discretion the Trial Court should have allowed the motion of the defendant John C. Alexander.

The judgments of the Circuit Court of Sangamon county are reversed and the cause is remanded with directions to vacate the default order and permit the defendants to answer.

Reversed and remanded with directions.