Harold Liddell, Plaintiff-Appellant, v. Noel Smith, Sherwood Land Company, a Corporation, Midwest Construction Company, a Corporation, Defendants-Appellees.

Gen. No. 64–81.

Fifth District.

November 1, 1965.

Modified opinion, December 28, 1965.

Craig & Craig, of Mt. Vernon (Glenn E. Moore and Ronald W. Polston, of counsel), for appellant.

Kern and Pearce of Carmi, and Wham and Wham, of Centralia, for appellees.

GOLDENHERSH, J.

This is one of a number of cases arising from a transaction involving several parcels of land in Wayne County.

Prior to August 1959, plaintiff, Harold Liddell, and one James Castle had an option to buy 960 acres of raw land which had never been cleared for agricultural purposes. They agreed with the defendant, Noel Smith, hereafter called Smith, that if he would furnish the money to buy the land they would clear it and prepare it for cultivation, and thereafter Castle would manage the agricultural operations.

On August 20, 1959, plaintiff, Smith and Castle, entered into a written agreement with Midwest Construction Ltd., hereafter referred to as Midwest, a corporation owned and controlled by Smith, which provided that plaintiff, Smith and Castle would organize a corporation to be known as Sherwood Land Company, hereafter referred to as Sherwood; that Sherwood would take title to the 960-acre tract above referred to; that plaintiff, Smith and Castle would clear the land and prepare it for sowing at a cost not to exceed $50 per acre; that Midwest would lend Sherwood the money with which to buy the land and pay for the preparation and clearing, and that Sherwood would execute a mortgage on the real estate and a chattel mortgage on the crops to secure the loan from Midwest.

On the same date, August 20, 1959, plaintiff, Smith and Castle entered into a written agreement which provided that plaintiff and Castle would clear the land and thereafter farm it, that Smith would use his abilities

297

and energies to obtain necessary financing, in consideration of which services he was to be relieved of all responsibilities connected with clearing or farming the land.

The parties proceeded to organize Sherwood, each taking one-third of its capital stock. Smith became president of Sherwood, Castle its secretary and plaintiff its vice-president. The land was purchased and title taken in Sherwood.

Plaintiff and Castle organized a corporation known as Pawnee Construction Corporation, hereafter called Pawnee, and Pawnee proceeded with the land clearance project. After a part of the work was completed, Castle withdrew from the agreement. The record is not clear as to the precise basis of withdrawal but it appears that Castle withdrew some equipment which had been his capital contribution to Pawnee, and assigned to Smith his stock in Sherwood.

On May 23, 1960, Sherwood and Pawnee entered into a written agreement in which it is stated that in compliance with the earlier oral agreement between the parties, Pawnee had cleared approximately 400 acres of land, that Pawnee was to receive $20 per acre for clearing the land of timber and brush; and $30 per acre for removal of debris, and the plowing and discing of the land. It provided that Pawnee would keep certain equipment on the job at all times, weather permitting, and would complete the work as rapidly as possible. The agreement further provided that the 400 acres already cleared were to serve as a model for the project, and any disagreement as to whether the work was properly performed was to be resolved by comparing the area in dispute with the completed 400-acre tract.

On September 1, 1960, Smith wrote plaintiff a letter wherein he stated that Pawnee had entered into an agreement with Sherwood, that as of the date of the letter Pawnee had not performed the work required to be done

under the terms of the agreement, that 150 shares of Sherwood's capital stock formerly owned by Castle had been assigned to him, that in consideration of plaintiff's completing the work which Pawnee was to have performed, Smith would assign 75 shares of Sherwood stock to plaintiff. As of the date of the letter, there were issued and outstanding 450 shares of Sherwood stock, of which plaintiff owned 150 shares.

The work proceeded through 1960, and the greater part of 1961. Apparently plaintiff and Smith enjoyed an amicable relationship, and in July of 1961, Sherwood entered into an agreement to purchase 320 acres of land which will hereafter be referred to as the Peyton land.

In addition to the work performed by plaintiff on the land clearing project, he employed other individuals and "traded out" portions of the work with one Bill O'Daniels, a dragline operator. In November of 1961 differences arose between Smith and plaintiff, and plaintiff moved his equipment off the job. The nature of the disputes and the evidence pertinent thereto will be discussed herein to the extent essential to this opinion.

On March 9, 1962, plaintiff filed suit in Circuit Court of Wayne County. In one count of the complaint directed against Sherwood, plaintiff alleged the organization of Sherwood, the agreement to clear the land for $50 per acre, Pawnee's failure to perform, and further alleged that he and Smith agreed that in consideration of plaintiff's completing the clearing work he was to receive one-half of Castle's stock and the sum of $12,500. He further alleged that, in addition to the work of clearing the land, he was to construct roadways, dams and levees on the 960-acre tract, for which he was to be paid the going rate for that type of work. Plaintiff alleged the performance of all of the work required of him and prays judgment in the amount of $50,000.

In a second count, directed against defendants, Sherwood and Smith, plaintiff alleged that the stock in Sher-

299

wood is unique and of peculiar value to plaintiff, that the transfer to him of one-half of the shares (75) formerly owned by Castle will give him equal voice with defendant, Smith, in the control of Sherwood and prays that defendant, Smith, be directed to assign the shares to plaintiff, and defendant, Sherwood, be ordered to transfer the record ownership of said shares to plaintiff.

In a third count, plaintiff alleged that Sherwood executed a mortgage on the 960 acres to defendant, Midwest, that Midwest knew of and consented to plaintiff's performing work on the 960 acres; that in addition thereto plaintiff had performed 150 hours of work of the value of $20 per hour on the Peyton tract, that said parcels were considered a single tract for all purposes by all the parties, and prayed that the court decree that plaintiff have a mechanic's lien on said parcels, prayed for the appointment of a receiver and a sale of the land, out of the proceeds of which plaintiff was to be paid the amount claimed to be due.

Defendants were duly served with summons, failed to plead and an order of default was entered. Plaintiff notified defendants of his intent to present evidence and ask for the entry of a decree granting the relief prayed in the complaint. Defendants appeared at, and participated in the hearing, cross-examined plaintiff's witnesses and offered evidence in mitigation.

After hearing six days of testimony, the court appointed a receiver for the crops growing on the land "for the purpose of preserving the status quo pending determination of the matters heretofore taken under advisement by the court." Defendants Sherwood and Smith appealed from the order appointing the receiver and this court (then the Fourth District) affirmed. Liddell v. Smith, 41 Ill App2d 408, 191 NE2d 260.

The court thereafter entered a decree wherein it found that plaintiff, under an oral agreement, had performed extra work on Sherwood's lands, entered judg-

ment for plaintiff and against defendant, Sherwood, for $14,650, but denied plaintiff's prayer for a mechanic's lien. The decree denied plaintiff's prayer for specific performance of the alleged agreement to assign 75 shares of Sherwood's stock to plaintiff. As to plaintiff's claim for the 150 hours of work on the 320-acre parcel, the court found that defendant, Smith, was the owner thereof and entered judgment for plaintiff and against defendant, Smith, in the sum of $3,000. Plaintiff prosecutes this appeal.

The record in this case is lengthy, consisting of 900 pages of testimony and 600 pages of pleadings, petitions, orders and exhibits. A detailed review of the evidence is not essential to this opinion, and only so much thereof as is necessary will be here recounted.

Plaintiff contends that the evidence clearly establishes he is entitled to all the relief prayed in the complaint, that defendants, by their default, have admitted the facts alleged and are precluded from questioning his right to the sums sued for, and specific performance.

 In case of default, for want of appearance or for failure to plead, the allegations of the complaint are admitted. Whalen v. Twin City Barge & Gravel Co., 280 Ill App 596. Section 50(5) of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 50(5)) provides that a judgment by default or a decree pro confesso may be entered for want of an appearance or failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought. Defaults are not encouraged, and the statutory provisions applicable thereto, like all other provisions of the Civil Practice Act are to be liberally construed. Dalton v. Alexander, 10 Ill App2d 273, 135 NE2d 101. A statutory provision empowering a court to require proof of the allegations of the pleadings would be meaningless unless the court is empowered to make findings of fact based on the evidence presented.

Evidence heard by the trial court without a jury, in support of a judgment by default, should therefore, be reviewed in the same manner as is other evidence heard by the court without a jury. The Supreme Court has held that where the chancellor sees the witnesses and listens to their testimony, his findings of fact will not be disturbed unless they are manifestly against the weight of the evidence. Schnepper v. Ashlock, 404 Ill 417, 88 NE2d 853. The weight to be given testimony is a matter to be determined by the trial judge, sitting without a jury, and his findings will not be disturbed unless manifestly erroneous. People ex rel. Penrod v. Chicago & N. W. Ry. Co., 17 Ill2d 307, 161 NE2d 126.

We have examined the testimony offered in support of plaintiff's claim for compensation for the extra work allegedly performed. We cannot say that the court's findings are manifestly erroneous, and therefore, the judgment in the amount of $14,650 will not be disturbed.

The testimony adduced by plaintiff in support of the count seeking specific performance of the agreement to assign to him Sherwood shares formerly owned by Castle shows that certain areas of the 960-acre parcel were not cleared. Plaintiff contends that these areas, if cleared, could not be cultivated, and the agreement required only that he clear so much of the acreage as was suitable for farming. Evidence offered by defendant shows the tracts in question were cleared subsequent to the time when plaintiff withdrew his equipment, and the evidence is conflicting as to whether these areas, were in fact, sowed, and a crop produced. We cannot say that the findings of the chancellor on the allegations in the count seeking specific performance are manifestly against the weight of the evidence.

With regard to that portion of the decree wherein the court awarded plaintiff $3,000 for work done on

the Peyton land, and denied his claim for mechanic's lien, our conclusions differ from those of the trial court. In an opinion filed simultaneously with this, this court has reversed the decree of the Circuit Court of Wayne County and found the Peyton tract to be impressed with a constructive trust for the benefit of Sherwood. The evidence shows that plaintiff's work performed on this parcel was to be his capital contribution to Sherwood in connection with the acquisition of the Peyton land. The judgment entered in favor of plaintiff and against the defendant, Smith, in the amount of $3,000 must, therefore, be reversed.

The evidence shows that plaintiff performed services and furnished machinery of the types and kinds contemplated by the Mechanic's Lien Act (Ill Rev Stats 1963, c 82, § 1 et seq.). Plaintiff performed services and furnished machinery for both the 960 acre parcel and the Peyton tract. The testimony shows that in performance of the work and in the use of plaintiff's machinery, plaintiff and his employees treated both parcels as one tract. It is clear from the evidence that expenditures were made by and on behalf of Sherwood for labor and materials for both parcels, and the transactions are so commingled as to make it impossible to allocate specific expenditures to the respective parcels. If plaintiff is entitled to a lien, under the evidence, his mechanic's lien should attach to both parcels.

The trial court denied plaintiff's claim for lien on the ground that plaintiff knew of the existence of mortgages held by defendant, Midwest. That the lien of a mortagage might have priority over a mechanic's lien is not ground for denial of the lien. The lien attaches by virtue of the provisions of ch 82, § 1, Ill Rev Stats 1963; the matter of priorities is determined by section 16. (Ill Rev Stats 1963, c 82, § 16.) Moulding-Brownell Corp. v. E. C. Delfosse Const. Co., 304 Ill App

491, 498, 26 NE2d 709. The issue of priorities was not before the trial court, nor is it before this court at this time. The plaintiff is clearly entitled to a mechanic's lien, and insofar as the decree denies his prayer therefor, the decree must be reversed.

For the reasons herein set forth, the decree of the Circuit Court of Wayne County is reversed, and the cause remanded, with directions to vacate the judgment entered in favor of plaintiff and against the defendant, Noel Smith, to enter judgment in favor of plaintiff and against the defendant, Sherwood Land Company, a corporation, in the amount of $14,650, and to render and enter its decree awarding plaintiff, Harold Liddell, a mechanic's lien on the 1280 acres of land described in the complaint in said sum of $14,650. The decree need not order foreclosure of the lien, or sale of the premises, since this court has today affirmed the decree of the Circuit Court of Wayne County ordering dissolution of Sherwood Land Company, and the sale of the premises and distribution of the funds derived from said sale will be effected under its terms.

Decree affirmed in part, reversed in part, and cause remanded with directions.

EBERSPACHER, P. J. and MORAN, J., concur.