**PADUCHIK, Jr., et, Plaintiffs, v. MIKOFF, Defendant.**

Common Pleas Court, Trumbull County.

No. 56940. Decided November 5, 1951.

152

J. E. Roberts, for plaintiffs.

Hoppe, Day & Ford, by Robert G. Day, Warren, for defendants.

(THOMAS, J, of Geauga County, sitting by assignment.)

## OPINION

By THOMAS, J.

From a Jury verdict against him in the sum of $3,000.00 awarded as damages for personal injuries suffered by the Plaintiff, and judgment thereon, the defendant moves for a new trial.

There was sufficient evidence from which the Jury could find the following facts.

Plaintiff, a boy of nine was crushed against the rear wall of his grandparent's farmhouse by a backing 1947 pickup truck owned and operated by the defendant.

Defendant lives with plaintiff's family on a farm three miles east of the Ohio-Pennsylvania line in Lawrence County, Pennsylvania. It is approximately twelve miles from plaintiff's home to the farm of his grandparents which is on Ohio Route No. 304 about three miles east of Hubbard.

Though defendant had not driven an automobile for fifteen to twenty years, he owned the 1947 pick-up truck which struck and injured the plaintiff. Usually the plaintiff's father drove himself and the defendant in the truck to and from their work at the Youngstown Sheet and Tube Company plant east of Youngstown.

On the afternoon of November 11, 1948, the plaintiff's mother drove the truck loaded with cabbages, from her farm to the grandparents' farm. The defendant and the plaintiff rode in the truck. Plaintiff's mother testified that she drove the truck at defendant's request.

The testimony generally established that on arrival at the farm the truck was driven to the back of the farmhouse, that plaintiff's mother entered the house, and that the defendant, plaintiff, and a man who lived there unloaded the cabbages from the truck to the cellar through a window close to which the truck had been backed and parked.

The Jury could have found further from all the evidence that when the cabbages were unloaded about 2:30 P. M. the defendant, in a hurry to get to work where he was due at 2:45 P. M., got into the truck to start it, and in some manner caused the truck to move backwards against the plaintiff. Defendant gave no warning before he moved the truck.

First to be considered is a renewal of defendant's claim that the service of process made upon him pursuant to §6308-1 GC, is ineffective because the accident happened on private property.

Sec. 6308-1 GC provides:

"Service of process upon non-resident owners or operators of motor vehicles. Any nonresident of this state, being the operator or owner of any motor vehicle, who shall accept the privilege extended by the laws of this state to non-resident operators and owners, of operating a motor vehicle, or of having the same operated, within the State of Ohio, or any resident of this State, being the licensed operator or owner of any motor vehicle under the laws of this state, who shall subsequently become a non-resident or shall conceal his whereabouts, shall, by such acceptance or licensure, as the case may be, and by the operation of such motor vehicle within the state of Ohio, make and constitute the Secretary of State of the State of Ohio his, her or their agent for the service of process in any civil suit or proceeding, instituted in the Courts of the State of Ohio against such operator or owner of such motor vehicle, arising out of, or by reason of, any accident or collision occurring within the State in which such motor vehicle is involved."

What are the acts of a non-resident owner of a motor vehicle which under §6308-1 GC will appoint the Secretary of State his agent for service of process?

The statute recites the acceptance of the "privilege extended by the laws of this State to non-resident operators and owners, of operating a motor vehicle, or of having the same operated within the State of Ohio" and "the operation of such motor vehicle within the State of Ohio."

Without determining whether a state has the police power to regard the operation of motor vehicles on private property as a privilege it is sufficient here to note that our present laws do not so regard the operation of a motor vehicle on private property. On the other hand the operation of a motor vehicle on the public roads is and for some time has been treated by our laws as a privilege.

Since 1908 (99 v 538-546) it has been necessary annually to register, and to pay a license tax on every motor vehicle "which shall be operated or driven upon the public roads or highways

of this state." Such tax, significantly, has been upheld, not as a property tax, but as a privilege or excise tax. **Graves v. Janes, 2 Oh Ap 383, Western Express Co. v. Wallace, 144 Oh St 612.**

Accordingly the reference in §6308-1 GC to the "privilege . . . of operating a motor vehicle or of having the same operated, within the State of Ohio" is deemed to refer to the operation of a motor vehicle upon a public road or highway of this state.

However no formal or express acceptance of this privilege is essential to constitute the appointment of the Secretary of State as agent of the non-resident for substituted service. Instead the use of the highway by the non-resident is equivalent to the appointment of the Secretary of State as agent on whom process may be served. Hess v. Pawloski 274 U. S. 352, 47 S. Ct. 632. 71 L. Ed. 1091.

Plaintiff's mother testified that she was driving defendant's truck at his request. This testimony which the Jury was entitled to believe if it chose, constituted sufficient proof that the defendant had the truck operated on the public roads of Ohio.

But even without this testimony the defendant's presence in the truck, while it was being operated on the public roads, created a rebuttable presumption that the plaintiff's mother was driving the truck as his agent. **Dahnke v. Meggitt, 63 Oh Ap 252.** There is neither proof, nor claim that he rode under protest. Since he was eventually to be driven to work the entire trip must be regarded as one from which he was deriving a benefit. To be sure it was a round about way to his work, but his continued presence in the truck, without protest, approved the route taken.

Hence there was more than sufficient evidence from which the Jury could have found that the defendant, a non-resident owner of a motor vehicle, had the motor vehicle operated upon the public roads of Ohio.

Such use of the public roads by the defendant constituted the Secretary of State as his agent on whom process could be served in any civil action described in the latter part of §6308-1 GC.

It remains to decide whether the present civil action which grows out of an accident happening on private property comes within the class of civil actions described in the latter part of §6308-1 GC.

It is evident that the latter part of §6308-1 GC does not expressly restrict the class of civil actions in which substituted service is permitted, to those civil actions which

grow out of the operation of a motor vehicle upon the public roads or highways of the State.

Quite the contrary the Statute speaks of "**any** civil suit . . . arising out of, or by reason of, any accident or collision occurring within the State in which such motor vehicle is involved." (Emphasis added.)

The word "any" means "without limitations." So long as "such motor vehicle is involved" the place of the accident is not limited. It includes "any" accident or collision within the State in which "such motor vehicle is involved." It includes accidents and collisions happening off as well as on the public highway.

Once the motor vehicle enters the state and is operated upon a public road or highway the act of operation causes the appointment of the Secretary of State as agent for substituted service. That appointment continues in effect until the motor vehicle leaves the State. And the appointment extends to and covers any civil action, growing out of any accident or collision in which such motor vehicle is involved without respect to where the accident may have occurred, except that the accident or collision must take place within the State.

The reasonableness of such an interpretation of the meaning of the latter part of §6308-1 GC may be tested by concrete example.

If an automobile operated by a non-resident negligently collides with a cow standing on the berm of the road the non-resident would manifestly be subject to substituted service in a civil action brought under §6308-1 GC because of the cow's death. Surely also if a cow peacefully pasturing in a field beside the road is killed by an automobile driven off the highway by a non-resident, the non-resident should be equally subject to substituted service in any action brought to recover damages for the cow's death.

Ability to require an operator of a motor vehicle to respond both civilly and criminally for negligent operation of a motor vehicle is an important deterrent to negligent conduct.

Recognition of this fact may well have prompted the Legislature to conclude that the potential negligent conduct of a non-resident motor vehicle operator should be deterred without respect to whether the negligence happens on or off the public highway. For in either case harm to person or property may result.

Furthermore a non-resident motor vehicle operator or owner by being required to submit to substituted service in a civil action which grows out of negligence occurring on private property is not thereby discriminated against but

on the contrary resident operators in the same situation are equally obligated by law.

By §6308 GC, an action for injury to person or property caused by the negligence of the owner or operator of a motor vehicle may be brought in the county where such injury occurs. A resident operator or owner charged with such negligence may be summoned in any county of the State wherein he resides.

Sec. 6308 GC does not restrict its coverage to injuries which occur on the public road or highway, and therefore it must be presumed the Legislature intended no such limitation.

Recently similar language in §6308-6 GC (The Guest Act) was construed by the Supreme Court to apply to private ways as well as public roads. **Kitchens v. Duffield, 149 Oh St 500.** In support of its decision the Court said:

**Sec. 6308-6 GC,** is an independent Statute, complete in itself and is couched in plain language. The General Assembly has not seen fit to limit it in terms to the operation of motor vehicles on public roads or highways, and, if this Court were to do so by a process of reasoning, which to say the least would be questionable, it would be exceeding its proper functions.

Everything the Supreme Court has there said applies to §6308 GC with equal force and effect.

By direct parity of reasoning, under §6308 GC a resident owner of a motor vehicle whose negligence causes injury to person or property in an accident occurring on private property may be sued in the County where the accident happens and may be summoned wherever he resides in the State.

If in the same situation a non-resident owner of motor vehicle is required to submit to substituted service under §6308-1 GC there is patently no discrimination between resident and non-resident owners and operators of motor vehicles.

Significantly the Supreme Court of Pennsylvania, the only Court which has construed a statute identical in wording with §6308-1 GC, found that it applied to an accident which happened off the highway on private property. Sipe v. Moyers 44 A. 2d. 203.

Finn v. Schreiber, 35 F. Supp., 638 which construed the New York substituted service law is cited contra. But the New York law like the Massachusetts law considered in Hess v. Pawloski supra are to be distinguished from §6308-1 GC since those laws specifically limit substituted service to actions growing out of accidents happening on the public roads and highways.

It is therefore concluded that where a non-resident owner of a motor vehicle has such motor vehicle operated upon the public roads of Ohio, if such motor vehicle becomes involved in an accident or collision on private property before it leaves the state, in an action growing out of such accident or collision substituted service may be made upon said non-resident pursuant to §6308-1 GC.

As such a non-resident owner of a motor vehicle the defendant was properly subjected to substituted service under §6308-1 GC.

The first ground of error is therefore OVERRULED.

As the second ground of error it is claimed that there was a failure to comply with the procedure for serving process established by §6308-2 GC in that "the Sheriff of Franklin County made service upon the Secretary of State but did not send to the Defendant by registered mail a like, true and attested copy, but the latter part was done by a Deputy Sheriff of Trumbull County. The copies were not attested but merely certified."

Such an interpretation of §6308-2 GC is not warranted.

The language "by the officer to whom the same shall be directed or by the Sheriff of Franklin County, who may be deputized for such purposes by the officer to whom the service is directed" refers solely to the service of process upon the Secretary of State.

The second requirement which reads "and by sending to the Defendant by registered mail . . . a like, true and attested copy thereof, with an endorsement thereon of the service upon said Secretary of State, addressed to such defendant at his last known address," is set off from the language quoted immediately above and is not modified by it.

The Statute therefore does not specify which officer shall send the registered mail notice. It does however permit the local officer to whom the process is originally directed to deputize the Sheriff of Franklin County to serve the Secretary of State, and to send registered mail copy of that service to the Defendant, or he may limit his deputization to the first function and reserve for himself the second. Having the power to appoint for both purposes he necessarily has the lesser power to appoint for one of those purposes only.

Apparently the same division of duties occurred in **Hendershot v. Ferkel, 144 Oh St 112,** was recognized in the Opinion, and was impliedly approved by the affirmance of the case.

The reason for requiring that registered mail notice be sent to the defendant at his last known address is to provide some "provision making it reasonably probable that notice of the service on the Secretary will be communicated to the non-

resident defendant who is sued." Wuchter v. Pizzutti 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446.

Here, such notice was not a probability but an actuality.

Furthermore a certified copy of the summons is the equivalent of an attested copy. "To certify" is one of the meanings of "attest." Webster's New International Dictionary.

Hence there was effective compliance with the procedural requirements of §6308-2 GC. The second ground of error is accordingly OVERRULED.

As his third ground of error the defendant claims the motion for directed verdict should have been granted. This claim was previously disposed of by the overruling of defendant's Motion for judgment n. o. v.

As his fourth ground of error it is claimed that Dr. McKelvey, plaintiff's attending surgeon, was permitted to testify "to the mere possibility of future injuries, on testifying to results in other unrelated cases."

The entire sequence of questions and answers, only the last answer of which is claimed to be objectionable, is here quoted.

"Redirect examination of Dr. McKelvey by Mr. Roberts:

Q. In your experience, even though it might appear on the surface that he appears to be normal would an injury of this kind affect him in after years?

MR. DAY: OBJECT.

COURT: OVERRULED.

A. I think it is very possible it might, having suffered some damage to the brain, certainly.

MR. DAY: I ask that be stricken and the Jury instructed to disregard it.

COURT: Sustained, and the Jury is instructed to disregard the answer.

MR. ROBERTS:

Q. In your experience, if you have had similar cases over a period of years, has there been any symptoms of loss of hearing or had aggravation from injuries of this kind?

MR. DAY: OBJECT.

COURT: OVERRULED.

MR. ROBERTS: You may answer.

A. Well there certainly have been, in my experience anybody suffering head injuries is apt to show injuries, traumatic injuries.

MR. DAY: We ask that the answer be stricken and the Jury instructed to disregard it.

COURT: OVERRULED.

Q. What symptoms usually arise?

A. They could vary.

MR. DAY: I want to maintain the objections to that in this line of questions.

COURT: You may answer.

A. They can vary all the way to complete unconsciousness, the complete length of the patient's life if the injury is severe enough, certainly. In mild cases, in mild heart cases the interferences in that type of symptoms is referable to the brain structure. As I say they vary all the way from general to the most serious, even epilepsy, as a result.

MR. DAY: I ask that be stricken.

COURT: OVERRULED.

It is evident that the Doctor's testimony of possible future injury was ruled out.

But the doctor further testified that "anybody suffering head injuries is **apt** to show injuries, traumatic injuries." Things that are apt to happen probably will happen. This answer was clearly proper. The following question seeks an elaboration of what is apt to happen.

The question is "**what symptoms usually arise?**"

The answer describes the whole gamut of consequential symptoms which may arise. The doctor does not emphasize epilepsy or any particular symptom but describes the range of symptoms which flow from head injuries. This appears to be a perfectly competent statement of medical experience. As such the answer was competent.

Moreover this testimony must be considered in the light of the general charge on damages in which we believe the test of future damages was correctly stated.

"But if you find all of the first three issues in favor of the Plaintiff you will then come to the question of damages; you will award the Plaintiff such a sum of money as will fairly and reasonably compensate him for any damages which he may have directly and proximately suffered by reason of any negligence by the Defendant; and in making such an award of damages you will regard and consider only these two elements of damage; One—any pain and suffering which the Plaintiff may have suffered or **which with reasonable certainty he may hereafter suffer** and secondly any physical disability which the Plaintiff has previously suffered or **which he may hereafter suffer with reasonable certainty. But in no event may your award of damages exceed the amount claimed in the Petition, which is the sum of $30,000.00.** (Emphasis added.)

Thus the Jury was instructed to limit future damages to those which the plaintiff was reasonably certain to suffer.

This ruled out possibilities by requiring reasonable certainties to be proved.

Furthermore $3,000.00 was not an excessive verdict in view of the extensive injuries suffered by the plaintiff. These included a basilar skull fracture, bleeding from nose and ear, unconsciousness, severe shock, fractures of the 2nd, 3rd and 4th left ribs, resulting pneumo-thorax, and pneumonitis, fracture of the humerus, fracture of the clavicle, and marked dilation of the stomach.

The plaintiff's recovery was good considering the severity and extent of his injuries. But his mother at the time of trial stated that he did not go back to school until January of 1949, that he suffered a lot of pain for over a year, that he lost weight after the accident, that he is very nervous and not like he was before the accident and that he appears tired and gets pale and short-winded when he runs.

Under all the circumstances it does not appear that the defendant was prejudiced by the answer of Dr. McKelvey.

The fourth ground of error is accordingly OVERRULED.

As a further ground of error the defendant complains of the refusal to submit special requests to charge Numbered VI and VII.

These were to the effect that "If Nellie Paduchik, the plaintiff's mother were guilty of negligence, directly and proximately operating solely, or independent and exclusive of any wrongful act or negligence on the part of the defendant, the verdict must be for the defendant."

It is extremely doubtful that there was any evidence of negligence on the part of the plaintiff's mother.

But even if there was, any question of her negligence was definitely foreign to the issues of this case. The issue of defendant's negligence depended solely on his own conduct, and not on the conduct of plaintiff's mother.

In fact it would have been prejudicial error to have given requested Charges VI and VII. **Schreiber v. National Smelting Co., 58 Abs 456; Leopold v. Williams, 54 Oh Ap 540.**

The other grounds of error not here commented on have been considered and found unsubstantial.

Motion for new trial overruled.