194 N.J. Super. 307 (1984)
476 A.2d 874
LEROY STROMAN AND MATTIE STROMAN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
MARGUERITE C. BROWN AND WILLIAM D. BROWN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1984.
Decided June 7, 1984.
*309 Before Judges BISCHOFF, PETRELLA and BRODY.
Joseph M. Pinto argued the cause for appellants (Polino and Williams, attorneys; Joseph M. Pinto on the brief).
Daniel J. Saul argued the cause for respondents (Frank J. Ferry, attorney; Daniel J. Saul on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendant William Brown (William) allowed his wife defendant Marguerite Brown (Marguerite) to take his automobile from their home in New Jersey and drive it to Pennsylvania for her own purposes. Plaintiff Larry Stroman claims he was injured in an accident Marguerite had with the automobile while she was in Pennsylvania. Stroman and his wife sued defendants in Pennsylvania where they recovered a judgment by default in the amount of $110,000 for damages arising out of the accident. This appeal is from a judgment entered below on the Pennsylvania judgment. The principal issue is whether the Pennsylvania court had personal jurisdiction over William so that we must give full faith and credit to its judgment. We conclude that William's action in letting Marguerite use his automobile to drive to Pennsylvania was not a sufficient contact with that state to enable it to exercise jurisdiction over him.
Plaintiffs purported to serve process upon defendants by complying with 75 P.S. § 2001 (Supp. 1971), the applicable portion of Pennsylvania's long-arm statute then in effect. It provided in relevant part:
[A]ny nonresident of this Commonwealth, being the operator or owner of any motor vehicle ... or being a person in whose behalf a motor vehicle ... is being operated whether or not such person is the operator or owner, who shall accept the privilege extended by the laws of this Commonwealth to nonresident *310 operators and owners of operating a motor vehicle [shall make the Secretary of the Commonwealth his agent for service of process].
There being no appellate court authority in Pennsylvania, it becomes our task to construe the statute. Cf. James v. Francesco, 61 N.J. 480, 485-486 (1972). The statute's reach, as we view it, includes any nonresident owner of a motor vehicle operated in Pennsylvania with his consent. See Wallace v. Frieday, 331 F. Supp. 420, 421 (W.D.Pa. 1971). William is in that category. We must therefore decide whether the Pennsylvania court, acting under the statute, reached beyond the constitutional limit of its jurisdictional grasp. The question was expressly left open in James v. Francesco, supra, 61 N.J. at 490, a case that dealt with a similar North Carolina statute.
In personam jurisdiction analyses begin with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in which the Court held that a state court may, consistent with due process, exercise jurisdiction over an absent defendant only if he had certain "minimum contacts" with the state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.
Our research and the thorough briefs of both counsel have turned up only two cases directly on point. Applying the International Shoe test, they come to opposite conclusions. Clemens v. District Court, 154 Colo. 176, 390 P.2d 83 (Sup.Ct. 1964), held its own statute unconstitutional. Davis v. St. Paul-Mercury Indemnity Company, 294 F.2d 641 (4 Cir.1961), held constitutional the North Carolina statute referred to in James, supra. The Restatement supports the Davis view in a comment:
[O]ne who permits another to drive his automobile into a state is subject to the judicial jurisdiction of that state as to causes of action arising from the operation of the automobile in the state. [Restatement, Conflicts of Law 2d, § 37, comment a at 158 (1971)]
Davis and the Restatement emphasize the dangerousness of a motor vehicle in concluding that it is "fair" for its owner to be *311 held accountable in a state where he permits the vehicle to be driven:
[O]wnership of property, particularly that which is capable of inflicting serious injury, may fairly be coupled with an obligation upon the owner to stand suit where the property is or has been taken with his consent. [Davis, supra, at 648]
The Restatement makes the same point as follows:
The state may exercise judicial jurisdiction over the defendant if the effect which could have been anticipated and which actually occurred are of a sort highly dangerous to persons or things. This is so even though the defendant has no other relationship to the state. [Restatement, supra, comment a at 158]
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), however, rejects this earlier reasoning. The Court focused instead on whether the nonresident purposefully availed himself of the privilege of conducting activities within the forum state. It held that the New York seller of a new automobile is not subject to process issued out of a court in Oklahoma where an accident involving the automobile later occurred. Quoting from Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958), the Court said:
It is foreseeable that the purchasers of automobiles sold by [the seller] may take them to Oklahoma, but the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." [World-Wide Volkswagen Corp., supra, 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502]
The Court expressly minimized the significance of foreseeability that the vehicle would cause injury in the forum state, id. at 295-297, 100 S.Ct. at 566-567, 62 L.Ed.2d at 500-501, noting:
But today, under the regime of International Shoe, we see no difference for jurisdictional purposes between an automobile and any other chattel. The "dangerous instrumentality" concept apparently was never used to support personal jurisdiction; and to the extent it has relevance today it bears not on jurisdiction but on the possible desirability of imposing substantive principles of tort law such as strict liability. [Id. at 296, 100 S.Ct. at 566, 62 L.Ed.2d at 501, n. 11]
The "purposefully availing" test given prominance in World-Wide Volkswagen is fully expressed in Hanson as follows:
[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the *312 forum State, thus invoking the benefits and protections of its laws. [Hanson, supra, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298]
The Supreme Court applied that test in two other post-Davis cases. In Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court held that simply owning real property in a state did not indicate that the owner was purposefully availing himself of the privilege of conducting activities in that state. In Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the Court held in a suit for child support that a New York defendant was not purposefully availing himself of the privilege of conducting activities in California by expressly letting his allegedly needy daughter reside there. Id. at 94, 98, 98 S.Ct. at 1698, 1700, 56 L.Ed.2d at 142, 145. See also Landis v. Kolsky, 81 N.J. 430, 436-437 (1979).
World-Wide Volkswagen also underscored the difference between the interest a state has in exercising jurisdiction over a nonresident and its power to do so:
Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. [444 U.S. at 294, 100 S.Ct. at 565, 62 L.Ed.2d at 499-500]
Taking our cue from World-Wide Volkswagen, Shaffer and Kulko, we conclude that William did not purposefully avail himself of conducting activities in Pennsylvania by casually giving his wife permission to drive his automobile there on her personal business. The judgment entered in Pennsylvania against William is therefore not entitled to full faith and credit.
Defendants raise several other issues in which they collaterally attack the Pennsylvania judgment as a fraud on the Pennsylvania court and claim discovery of new evidence. Insofar as these points are directed to the judgment entered against William, they are rendered moot by our opinion reversing that *313 judgment. Insofar as they are directed to the judgment entered against Marguerite, they are at best premature.
We are advised that Marguerite died during pendency of the New Jersey action before the entry of judgment. Because no one called her death to the attention of the trial judge, the case proceeded as though she were still alive. As Vice-Chancellor Bigelow said, "An earthly court has no jurisdiction over the dead." In re Admiral Sampson B. & L. Assn., 136 N.J. Eq. 292, 293 (Ch. 1945).
Death of a party during pendency of an action is governed by R. 4:34-1 which provides as follows:
4:34-1. Death
(a) Party Survivors. In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be noted upon the record and the action shall proceed in favor of or against the surviving parties.
(b) Non-Party Survivors. If a party dies and the claim is not thereby extinguished, the court shall on motion order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party, and notice thereof shall be served on parties as provided by R. 1:5-2 and on persons not parties in the manner provided by either R. 4:4 (service of original process) or, if the court directs, R. 4:67-3 (service of orders to show cause).
The claim against Marguerite based on the Pennsylvania judgment was not extinguished by her death, but that claim cannot be heard unless those having an interest in her estate or their representatives are first made parties pursuant to R. 4:34-1(b). See Palko v. Palko, 73 N.J. 395, 398 (1977). Due process requires that they be given notice and an opportunity to be heard in order for a judgment against Marguerite's estate to be valid. See Schnitzer & Wildstein, N.J.Rules Serv. (1982), AIV 1224. The New Jersey judgment against Marguerite is therefore void.
The judgment against William Brown is reversed. The judgment against Marguerite Brown is reversed and remanded to the trial court to enable plaintiffs to move within 45 days for *314 the substitution of the proper party or parties for Marguerite Brown and for such further proceedings as may thereafter be warranted. We do not retain jurisdiction.