William C. FINKBINER, Plaintiff,

v.

Howard J. MULLINS, and Gene Mullins, individually, and t/a Gene's Auto Sales, and Charles Howard Ahmer, individually and t/a Ahmer's Used Cars, Defendants.

Superior Court of Delaware, Sussex County.

Submitted: March 20, 1987.
Decided: April 28, 1987.

Norman C. Barnett of Schab & Barnett, P.A., Georgetown, for plaintiff William C. Finkbiner.

Harold Schmittinger, and William D. Fletcher, Jr. of Schmittinger and Rodriguez, P.A., Dover, for defendant Gene Mullins.

Mason E. Turner, Jr. of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant Charles Howard Ahmer.

## OPINION

CHANDLER, Judge.

This is the Court's decision on nonresident defendant Charles H. Ahmer's motion

to dismiss pursuant to Superior Court Civil Rule 12 on the ground that the Court lacks jurisdiction over his person. The plaintiff William C. Finkbiner and co-defendant Gene Mullins have presented briefs opposing this motion, the latter asserting standing on the basis of his crossclaim against Ahmer for indemnity or contribution.

## I. *Background*

Plaintiff's cause of action is a personal injury suit arising out of an accident which occurred at 3:15 a.m. on July 10, 1984 in the parking lot of Gene's Auto Sales, a business owned by Gene Mullins, in Bridgeville, Delaware. Plaintiff alleges that he was injured when struck by a car driven in a negligent and reckless manner by defendant Howard J. Mullins, the son of Gene Mullins. Plaintiff further alleges that the car in question, a 1978 Cougar, was owned by Gene Mullins and/or Charles Ahmer and that they each breached a duty of care owed to the plaintiff when they authorized and permitted Howard Mullins to operate the car.

Defendant Charles Ahmer is a resident of Baltimore, Maryland and owner of Ahmer's Used Cars, a dealership located in Baltimore. In late June 1984, Gene Mullins inspected the 1978 Cougar on Ahmer's lot. A few days later one of the Mullins family called Ahmer and indicated that they wished to purchase it. Someone on behalf of Mullins came to Baltimore on July 7 or 8, took the keys to the vehicle that had been placed in Ahmer's office with the Mullins' name on them and drove off with the Cougar after first placing Gene Mullins' dealer's tag on it. On July 14, 1984, four days after the accident, one of the Mullins' returned to Baltimore where Ahmer wrote out a bill of sale for the vehicle and transferred title to Gene's Auto Sales. Money was also exchanged, but it is unclear whether the car in question was paid for at that time, as a later discussion of the co-defendants' business practices will reveal. Thus, at the time of the accident on July 10, 1984, the car displayed Gene Mullins' dealer's tag and its certificate of title was in the name of Ahmer's Used Cars.

Plaintiff initially sought jurisdiction over the nonresident defendant pursuant to the Delaware Nonresident Motorist Statute, 10 *Del.C.* § 3112. Additionally, he later served process on Ahmer pursuant to Delaware's general long-arm statute, 10 *Del.C.* § 3104. The nonresident defendant contends that, given the factual circumstances of this case, the Court lacks personal jurisdiction over him under either statute.

## II. *The Facts*

The relevant record consists of the plaintiff's complaint, the nonresident defendant's affidavit, in which he denies that he has ever transacted business in Delaware or permitted Howard Mullins to operate the vehicle, and the nonresident defendant's deposition. The deposition reveals the nature of Ahmer's business practices with his co-defendant Gene Mullins and with other Delaware auto dealers.

Ahmer is the sole proprietor of Ahmer's Used Cars, located at 4014 North Point Boulevard, Baltimore. He is licensed to do business only in Maryland. He buys used cars and sells them wholesale and retail. He primarily buys his used cars from new car dealers in the Baltimore area. He also goes to car shows and car sales, mostly in Pennsylvania. He apparently does not advertise through the media in Delaware, but he exchanges business cards with other dealers, including Delaware dealers, at the car shows and sales. People also learn of his business through friends or by driving past his car lot.

Ahmer has done business with other Delaware dealers in the past, in particular with Dover Auto Mart and Bear Auto Sales on Route 40. The transactions always occurred either at the shows in Pennsylvania or at Ahmer's lot in Baltimore. One Delaware dealer ceased doing business with Ahmer eventually because it was too far to come to purchase cars and Ahmer was unwilling to deliver cars to Delaware, having sufficient business in the Baltimore area.

Over a period of several years Ahmer sold approximately 400 to 500 cars to Gene's Auto Sales. The last transaction between the co-defendants took place in

March 1986. They had an informal business arrangement which is apparently the custom between dealers. Gene Mullins and/or other members of his family would come to Baltimore to purchase cars. They would test drive cars around Ahmer's large lot or sometimes place their dealer's tags on the cars and drive them on the road. They would then select several cars to purchase. Ahmer would place the car keys labelled with the Mullins name in a designated spot in his office. One or several members of the Mullins family would return, pick up the keys, place Gene Mullins' dealer's tags on the cars and drive them back to Delaware.

The co-defendants operated on an honor system. Ahmer kept a running balance of Mullins' car purchases. On each trip to Baltimore Mullins paid Ahmer some of what he owed. Ahmer then wrote out the bills of sale for cars that had previously been driven to Delaware. A bill of sale is a requirement for title to transfer. This was not, however, an arrangement whereby Ahmer kept title to the cars as security for payment. Ahmer transferred the titles whenever Mullins needed them for his sales and Mullins paid for the cars whenever he had the money. Title often transferred before Ahmer received payment for a car. However, Mullins always paid what he owed and he never returned a car to Ahmer.

Mullins inspected the 1978 Cougar in late June. One of the Mullins family called Ahmer from Delaware in early July and told Ahmer that Mullins wished to purchase this car. One of the Mullins family took possession of the car and its keys in Baltimore on July 7 or 8 and drove the car back to Delaware. On July 14, four days after the accident, Ahmer wrote a bill of sale for eight cars, including the 1978 Cougar, and a receipt for $3800, although he may not have actually been paid that amount at that time. Ahmer then transferred title to the eight cars to Gene's Auto Sales.

### III. The Law

When personal jurisdiction over a nonresident defendant is challenged on a motion to dismiss, the plaintiff has the burden of showing a basis for this Court's long-arm jurisdiction. *Harmon v. Eudaily*, Del.Super., 407 A.2d 232 (1979), *aff'd*, Del.Supr., 420 A.2d 1175 (1980). This burden, however, is met by a threshold *prima facie* showing that jurisdiction is conferred by the statute. *Id.* at 233. In this case, the Court must first decide whether 10 *Del.C.* § 3112 confers jurisdiction over defendant Ahmer. If that statute does not apply, the Court must then analyze the requirements of § 3104 to determine whether it provides for jurisdiction and, if it does, whether the exercise of that jurisdiction over defendant Ahmer would offend due process. *See Moore v. Little Giant Industries, Inc.*, D.Del., 513 F.Supp. 1043 (1981), *aff'd*, 3rd Cir., 681 F.2d 807 (1982). The Court concludes that under either statute jurisdiction over the nonresident defendant would be improper and that his motion to dismiss must be granted.

### A. 10 *Del.C.* § 3112

10 *Del.C.* § 3112(a) authorizes service of process on "[a]ny nonresident owner, operator or driver of any motor vehicle, who accepts the privilege extended by law to nonresidents of this State to operate or drive such motor vehicles on the public streets, roads, turnpikes or highways of this State by operating or driving such motor vehicle or by having the same operated or driven on any public street, road, turnpike or highway of this State...." The nonresident defendant asserts that the statute must be strictly construed and that plaintiff's attempt to obtain jurisdiction under this statute fails in three particulars. First, the nonresident defendant argues that he was not an "owner, operator or driver" of the motor vehicle at the time of the accident, having transferred title and possession of the car to Gene Mullins prior to the accident. Second, he contends that Howard Mullins was not his agent and was not operating the car with his express or implied permission or authority; hence, he was not "having the [vehicle] operated or driven" in Delaware on his behalf. Third, he asserts that the operation of the vehicle which is complained of did not occur "on

the public streets, roads, turnpikes or highways of this State," but rather on private property. Since these three requirements have not been met, the nonresident defendant argues that the statute does not apply to him.

The Court initially notes that the traditional rule that a statute "in derogation of the common law" must be strictly construed has been relaxed in recent years because in some cases the rule had been so rigidly applied as to frustrate the fundamental purpose of the statute. *Lightburn v. Delaware Power & Light Co.*, Del.Supr., 158 A.2d 919 (1960); *see Kohanovich v. Youree*, Del.Supr., 147 A.2d 655 (1959) (non-resident motor vehicle statute applies to accident on parking lot adjoining highway, if use incidental to use of highway); *Snyder v. Beam*, Del.Super., 380 A.2d 1374 (1977) ("operator" as used in 10 *Del.C.* § 3112 includes a nonresident employer who is having a vehicle driven on the roadways of Delaware by his employee even though employer does not own vehicle). In this case, however, it is not even necessary to depart from the traditional rule in order to find, for the purpose of this motion, that the nonresident defendant was the owner of the vehicle at the time of the accident.

■ The record is clear that the certificate of title of the 1978 Cougar was in the name of Ahmer's Used Cars as of the date of the accident. The general rule is that proof that a motor vehicle is registered in the name of a person as owner creates a presumption which makes a *prima facie* case of ownership of the vehicle. 11 P. Kelly, *Blashfield Automobile Law and Practice* § 417.5 (rev. 3rd ed. 1977); *see State v. One 1968 Buick Electra*, Del.Super., 301 A.2d 297 (1973) (a certificate of title to a motor vehicle is generally presumptive evidence of ownership of the vehicle); *Cammile v. Sanderson*, Del.Super., 101 A.2d 316 (1953) (registration certificate is *prima facie* evidence of ownership under 21 *Del.C.* § 101); *cf. Ramirez v. Rackley*, Del.Super., 70 A.2d 18 (1949) (where nonresident motorist was in truck at time of accident and truck was registered in his name, motorist by delaying effort to vacate

default judgment against him until statute of limitations had run against plaintiff was estopped from raising defense of lack of ownership).

■ The record also reveals that the motor vehicle was displaying defendant Gene Mullins' dealer's tag at the time of the accident. That fact creates a presumption of ownership by Gene Mullins. *See* 11 *Blashfield* at § 417.5. However, on a motion to dismiss for lack of personal jurisdiction, the record is construed most strongly against the moving party. *Harmon v. Eudaily*, 407 A.2d at 233. Accordingly, the Court finds that the plaintiff has made a *prima facie* showing that the nonresident defendant was the owner of the motor vehicle at the time of the accident.

Having decided this issue, the Court must now decide whether the nonresident defendant impliedly consented to the appointment of the Secretary of State as his agent for service of process "by operating or driving such motor vehicle or by having the same operated or driven on any public street, road, turnpike or highway of this State...." It is undisputed that the nonresident defendant was not present in the car at the time of the accident, did not drive the car into Delaware and apparently has never been in Delaware. The question, therefore, is whether the nonresident defendant was "having the [motor vehicle] operated or driven" in Delaware.

This Court has been unable to find any reported or unreported Delaware cases that interpret the phrase "by having the same operated or driven" in the factual circumstance of a nonresident owner of a motor vehicle who was not present when his vehicle was involved in an accident in Delaware. The common significance of the words implies at the very least that the owner consented to the operation of his motor vehicle by another person. The phrase could also be construed to mean the operation of a motor vehicle by an agent of the owner on his behalf or by an employee of the owner acting within the scope of his employment.

In *Paduchik v. Mikoff* the Ohio Court of Common Pleas interpreted a similar phrase

in Ohio's nonresident motorist statute in a factual setting dissimilar to this case.[1] 112 N.E.2d 69 (1951), *aff'd*, Ohio Supr., 158 Ohio St. 533, 110 N.E.2d 562 (1953). A jury had awarded damages to a plaintiff who had been crushed against a wall on private property by a backing truck owned and operated by the nonresident defendant. *Id.* at 71. The nonresident defendant moved for a new trial and also renewed his claim that service of process had been ineffective because the accident happened on private property. *Id.* at 72. The court first determined that the nonresident defendant had impliedly consented to the appointment of the secretary of state as his agent for service of process by his use of the highway:

> Plaintiff's mother testified that she was driving defendant's truck at his request. This testimony ... constituted sufficient proof that the defendant had the truck operated on the public roads of Ohio. But even without this testimony the defendant's presence in the truck, while it was being operated on the public roads, created a rebuttable presumption that the plaintiff's mother was driving the truck as his agent. [Citation omitted.] There is neither proof, nor claim that he rode under protest. Since he was eventually to be driven to work the entire trip must be regarded as one from which he was deriving a benefit.... Hence there was more than sufficient evidence from which the jury could have found that the defendant, a non-resident owner of a motor vehicle, had the motor vehicle operated upon the public roads of Ohio.

*Id.* at 72–73. The court went on to hold that the statute, which spoke of "any civil suit ... arising out of ... any accident or collision occuring within the state in which such motor vehicle is involved," included

accidents occurring on private property. *Id.* at 73.

An Illinois court decided a similar question under its then applicable nonresident motorist statute, *Ill.Rev.Stat.* ch. 95½ § 23 (1953),[2] on a motion to set aside a default judgment. *Dalton v. Alexander*, Ill.App., 10 Ill.App.2d 273, 135 N.E.2d 101 (1956). The court held that the affidavits of the defendants reciting that at the time of the accident the driver of the motor vehicle was not their servant, agent or employee, but was driving the motor vehicle loaned to him by the defendants for his own personal use made a *prima facie* showing that no agency relationship existed between the driver and owners of the vehicle. *Id.* 135 N.E.2d at 106. If the driver were merely a bailee, the court concluded that the long-arm statute did not apply to him. *Id.*

These cases support the notion that an agency relationship between owner and driver is implicit within the phrase "by having the same operated or driven" in 10 *Del.C.* § 3112. One reported Delaware case also suggests that Delaware courts have this understanding. In *Snyder v. Beam*, Del.Super., 380 A.2d 1374 (1977), this Court considered the question "whether the term 'operator,' as used in 10 *Del.C.* § 3112, includes a nonresident employer whose employee or agent is involved in a motor vehicle accident on a Delaware roadway while acting in the course of the employer's business but driving a vehicle not owned by the employer." *Id.* at 1375–76. The Court concluded that the term should be construed "to include an employer *who is having a vehicle driven* on the roadways of Delaware by his employee even though the employer does not own the vehicle." *Id.* at 1377 (emphasis added).

Having analyzed the case law in other jurisdictions, the court in *Snyder* further justified its conclusion as accomplishing the

---

1. *Ohio Gen.Code* § 6308–1 provided in relevant part: "Any non-resident of this state, being the operator or owner of any motor vehicle, who shall accept the privilege extended by the laws of this state to non-resident operators and owners, of operating a motor vehicle, or of having the same operated, within the state of Ohio...." (presently codified at *Ohio Rev.Code Ann.* § 2703.20 (Page 1981)).

2. *Ill.Rev.Stat.* ch. 95½ § 23 (1953) stated in pertinent part: "[t]he use and operation by any person of a motor vehicle over the highways of the State of Illinois shall be deemed an appointment by such person of the Secretary of State...." (presently codified at *Ill Ann.Stat.* ch. 95½ § 10–301 (Smith–Hurd 1973).

fundamental purpose of the Delaware Non-resident Motorist Statute, which is to provide a single forum for litigation of claims arising from accidents in which one of the motor vehicles involved is owned by a nonresident, thereby avoiding the burden of having to pursue a tortfeasor to his place of domicile. *Id.* at 1377; *see Beck v. Lund's Fisheries, Inc.*, Del.Supr., 164 A.2d 583 (1960); *Kohanovich v. Youree*, Del. Supr., 147 A.2d 655 (1959).

> The legislature surely did not intend to be more liberal regarding service upon the agent than upon the principal. If both were present in court, liability would be equal as to both, and there is no reason why the principal should not be equally subject to service, just as he is equally subject to liability.

*Snyder v. Beam*, 380 A.2d at 1377 (quoting *Weaver v. Winn Dixie Stores*, N.D.Ohio, 160 F.Supp. 621, 623 (1958).

▮▮▮ The rationale used by the Court in *Snyder v. Beam* is helpful in this case. As a general rule and in the absence of any statute imposing liability, mere ownership of a motor vehicle at the time of an accident caused by the negligent operation of another will not subject the owner to liability for the results of such negligence. 6 F. Lewis, *Blashfield Automobile Law and Practice* § 254.4 (3rd ed. 1966). To render the owner liable, there must be some duty on the part of the owner to the plaintiff, a failure to perform such duty and resulting injuries. *Id.* Liability of the owner for the negligence of another person in driving his vehicle, therefore, is usually based on the owner's supposed control over the driver at the time of the accident. *Id.* Under the principle of *respondeat superior*, therefore, an owner of a motor vehicle is liable

for the negligent operation of that vehicle by his agent or servant who at the time of the accident was engaged in the master's business or pleasure with the master's knowledge and direction. *Id.; see Willis v. Schlagenhauf*, Del.Super., 188 A. 700 (1936). Conversely, in the absence of agency, an owner is not liable for injuries negligently caused by its operation by another whom he merely permits to use the vehicle for the latter's own purposes. *See Smith v. Callahan*, Del.Supr., 144 A. 46 (1928) (father not liable for son's negligent operation of automobile owned by father and permitted by him to be used by his family when son is alone and in pursuit of his own pleasure); *Horkey v. Cortz*, Del.Super., 173 A.2d 741 (1961) (negligence of bailee, prospective purchaser of automobile, not imputable to bailor, automobile dealer). The rationale underlying this latter rule is that an automobile is not such a dangerous instrumentality that its mere use will impose liability upon the owner for injuries caused by another irrespective of the relationship of master and servant or principal and agent. *Smith v. Callahan*, 144 A. at 50.[3]

▮▮▮ It is this Court's opinion that the phrase "by having the same operated or driven" in 10 *Del.C.* § 3112 should be construed to apply in circumstances where a nonresident owner authorizes or permits his agent or employee to operate his motor vehicles on the roadways of Delaware on his behalf and within the scope of his servant's employment. However, the phrase should not be construed to include a nonresident owner who merely permits another person to use his motor vehicle in the absence of a master-servant or agency relationship. Such an interpretation is in keeping with the statute's fundamental purpose

---

**3.** There is, however, an exception to this general rule where an owner entrusts his motor vehicle to one who is so reckless or incompetent that in his hands the motor vehicle becomes a dangerous instrumentality. 6 *Blashfield* at § 254.22. In that circumstance, the owner is liable if he knows or has reason to believe at the time he entrusts the vehicle to another that the driver is incompetent. *Id.* The owner is therefore liable to the plaintiff for his own negligence in entrusting his motor vehicle to an incompetent driver. *See Restatement (Second) of Torts* § 390

(1965). This doctrine of negligent entrustment has been adopted in Delaware. *Smith v. Callahan*, 144 A. at 51. There is nothing in the record, however, that suggests the plaintiff has a cause of action under this doctrine. The Court, therefore, finds it unnecessary to consider whether a nonresident owner of a motor vehicle which he had negligently entrusted to another who then became involved in an accident in Delaware would be amenable to process under 10 *Del.C.* § 3112.

of providing a single forum for claims arising from an accident in which a motor vehicle owned by a nonresident is involved. It is also consistent with due process in that it limits the class of nonresident owners who are amenable to service or process under § 3112 to those who have sufficient minimum contacts with the forum state. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

This Court has discovered only three cases which analyze the constitutionality of the application of a nonresident motorist long-arm statute to a nonresident owner who merely permits another person to drive his motor vehicle into the forum state.[4] The two earlier cases, each applying the *International Shoe* test to determine whether an absent defendant had certain minimum contacts with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,' " *Id.* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)), came to opposite conclusions. *Clemens v. District Court*, Colo. Supr., 154 Colo. 176, 390 P.2d 83 (1964) held its own statute unconstitutional where it was broad enough to encompass a nonresident owner of a motor vehicle who had loaned her car to another who then had driven the same for his own purposes and had had an accident in Colorado. *Davis v. St. Paul–Mercury Indemnity Co.*, 4th Cir.,

294 F.2d 641 (1961), however, held constitutional the application of the North Carolina statute to a nonresident owner who had merely permitted another to drive his car into that state. *Davis* emphasized the dangerousness of a motor vehicle in concluding that it was fair for an owner to stand suit in a state where he permits the vehicle to be driven. *Id.* at 648.

More recently, the court in *Stroman v. Brown*, N.J.Super.App.Div., 194 N.J.Super. 307, 476 A.2d 874 (1984), rejected the reasoning in *Davis*, having heeded the implicit admonition in *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 296 n. 11, 100 S.Ct. 559, 567 n. 11, 62 L.Ed.2d 490 (1980), that the concept of a dangerous instrumentality has no relevance to the issue of personal jurisdiction. The New Jersey court instead focused on whether the nonresident defendant had purposefully availed himself of the privilege of conducting activities within the forum state. *Stroman*, 476 A.2d at 876; *see World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In concluding that a Pennsylvania default judgment entered against the defendant was not entitled to full faith and credit, the New Jersey court held that the nonresident defendant had not purposefully availed himself of the privilege of conducting activities in Pennsylvania by casually giving his wife permission to drive his car there on her own

---

**4.** The applicable statutes are:
  1953 *Colo.Rev.Stat.* § 13–8–5 (1961 Supp.):
  13–8–5. Definition of terms.
  When used in sections 13–8–5 through 13–8–10, the following terms shall have the following meanings:
  (1) A 'driver' is the owner or operator of a motor vehicle.
  (2) An 'accident' is any occurrence in the state of Colorado involving a motor vehicle which results in damage to property or injury or death to a person.
  *N.C.Gen.Stat.* § 1–105 (Supp.1959):
  The acceptance by a nonresident of the rights and privileges conferred by the laws now or hereafter in force in this State permitting the operation of a motor vehicle by such nonresident on the public highways of this State ... shall be deemed the equivalent to the appointment by such nonresident of the Commissioner of Motor Vehicles ... to be his true and

lawful attorney ... upon whom may be served all summons or other lawful process in an action ... growing out of any accident or collision in which said nonresident may be involved by reason of the operation by him, for him, or under his control or direction, express or implied, of a motor vehicle on such public highways of this State....
  *Pa.Stat.Ann.* tit. 75, § 2001 (Purdon Supp. 1971):
  [A]ny nonresident of this Commonwealth, being the operator or owner of any motor vehicle ... or being a person in whose behalf a motor vehicle ... is being operated whether or not such person is the operator or owner, who shall accept the privilege extended by the laws of this Commonwealth to nonresident operators and owners of operating a motor vehicle [shall make the Secretary of the Commonwealth his agent for service of process].

personal business. *Stroman*, 476 A.2d at 876.

These latter cases support this Court's conclusion that the phrase, "by having the same operated or driven," in 10 *Del.C.* § 3112 should not be expansively construed to include within its reach a nonresident owner who merely permits another to drive his motor vehicle for that person's own business or pleasure. It is foreseeable that a borrower of a motor vehicle lent by a nonresident owner will drive that vehicle into Delaware. However, foreseeability that a chattel will find its way into the forum state is not a criterion for personal jurisdiction. *See World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. The unilateral activity of the borrower in driving to Delaware should not satisfy the requirement of the nonresident owner's contact with the forum state. *See Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. An agency or master-servant relationship between the nonresident owner and operator or driver of his vehicle, however, provides evidence that the nonresident owner purposefully availed himself of the privilege of conducting activities within the forum state, *id.*, and that his contacts with the forum state were such that he should have reasonably anticipated being haled into court there. *See Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, *reh'g denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

Having decided that the phrase, "by having the same operated or driven," requires an agency or master-servant relationship between nonresident owner and operator or driver, the next issue is whether the plaintiff has made a *prima facie* showing that defendant Howard Mullins was operating the motor vehicle as the nonresident defendant's agent or employee.

In most jurisdictions, proof of ownership in an action for injuries upon being struck by a motor vehicle creates a *prima facie* case that the driver was the agent or servant of the owner and was operating the vehicle in pursuit of the owner's business and within the scope of the driver's employment. 11 *Blashfield* § 417.7; Annot., 42

A.L.R. 893 (1926). Delaware, however, does not follow this rule. *See Lamanna v. Stevens*, Del.Super., 93 A. 962 (1915). In *Lamanna*, the court held that defendant's admission that he owned the automobile in question in an action for injuries caused by the negligent operation of the vehicle was insufficient to show *prima facie* that the driver was acting for the defendant within the scope of his employment. *Id.* at 962. The court concluded that "there must be some affirmative evidence of the relation of master and servant, and that the servant was acting within the scope of his master's employment at the time of the injury complained of before there can be recovery." *Id.* at 963.

A review of the record in this case reveals that there is no affirmative evidence of an agency relationship between nonresident defendant Ahmer and defendant Howard Mullins. Plaintiff has alleged, and for the purpose of this motion the allegation is taken as true, *ALTECH Industries, Inc. v. Al Tech Specialty Steel*, D.Del., 542 F.Supp. 53 (1982), that the nonresident defendant permitted and authorized Howard Mullins to drive his motor vehicle. There is no allegation, however, that Mullins was operating the vehicle on Ahmer's behalf or under Ahmer's control at the time of the accident or at any other time. On the contrary, the record indicates that Howard Mullins, along with other family members, participated in the operation of Gene's Auto Sales.

The burden is on the plaintiff to make a specific showing that this Court has jurisdiction under a long-arm statute. *See Greenly v. Davis*, Del.Supr., 486 A.2d 669 (1984). In this case, plaintiff has failed to establish *prima facie* that defendant Howard Mullins was operating the motor vehicle as an agent or employee of the nonresident defendant. Therefore the nonresident defendant was not "having the same operated or driven" within Delaware and is not amenable to process under 10 *Del.C.* § 3112. This conclusion makes it unnecessary for the Court to decide whether the operation of the motor vehicle in the parking lot of Gene's Auto Sales was incidental

to the use of the highways for the purpose of the statute. *See Kohanovich v. Youree,* Del.Supr., 147 A.2d 655, 657 (1959).

### B. 10 *Del.C.* § 3104

Plaintiff additionally served process on the nonresident defendant pursuant to Delaware's general long-arm statute, 10 *Del.C.* § 3104(c). Co-defendant Gene Mullins argues that personal jurisdiction over the nonresident defendant is proper under this statute as well, citing in particular § 3104(c)(4) as the applicable provision.[5] Mullins argues that the record clearly establishes that the nonresident defendant carried on a continuous course of activity which involved the State of Delaware and that he also derived substantial revenue from goods used or consumed in the State.

According to Mullins, the nonresident defendant sold hundreds of cars in the State of Delaware and thus engaged in a continuous course of activity in the forum state. Furthermore, Mullins estimates, based on the evidence of a receipt of $3800 for eight cars in July 1984 and testimony of the nonresident defendant that he sold ten cars to Gene's Auto Sales in January 1986 for $6250, that the total revenues received by the nonresident defendant from his sales to Gene's Auto Sales alone exceed $200,000. However, Mullins' interpretation of the facts and the statute is erroneous.

Subsection 3104(c)(4) is derived almost completely from § 1.03(a)(4) of the Uniform Interstate and International Procedure Act (U.I.I.P.A.), 13 *U.L.A.* § 1.03 (1980).[6] *See Waters v. Deutz Corp.,* Del.Supr., 479 A.2d 273 (1984); *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980). The Comment to this subsection in the U.I.I.P.A. states:

> Section 1.03(a)(4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant.

> * * * * *

> A sufficient nexus exists if (a) the defendant regularly advertises his products or services in the state or (b) carries on some other continuous course of activity there or (c) dervies substantial revenue from goods used or consumed or from services rendered in the state. It is not necessary that this activity amount to the doing of business.

> It should be noted that the regular solicitation of business or the persistent course of conduct required by section 1.03(a)(4) need have no relationship to the act or failure to act that caused the injury. No distinctions are drawn between types of tort actions.

The words of the statute are clear in requiring that the persistent course of activity be carried on *in the forum state.* Most recently, the Supreme Court in *LaN-*

---

**5.** 10 *Del.C.* § 3104(c) provides as follows:

(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

**6.** 13 *U.L.A.* § 1.03 provides in pertinent part:

"§ 1.03 [Personal Jurisdiction Based upon Conduct]

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

* * * * *

(4) causing tortious injury in this state by an act or omission outside this state ifhe regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; ..."

*uova D & B, S.p.A. v. Bowe Co.*, Del.Supr., 513 A.2d 764 (1986), interpreted this clause to require a "presence" by the nonresident defendant in the forum state. *Id.* at 769. In *LaNuova*, the Supreme Court affirmed the assertion of personal jurisdiction over an Italian manufacturer of roofing material pursuant to § 3104(c)(4). *Id.* The manufacturer had established an insured warranty program designed to enhance the marketability of its product which was competing with other roofing materials sold in Delaware. The Court viewed the warranties, signed in blank by the president of the company, as a "presence" in Delaware from the moment they were delivered to the company's American distributor with authority to deliver them to the ultimate purchaser. *Id.* The establishment and implementation of the warranty program constituted a persistent course of conduct by the nonresident defendant in Delaware that justified the assertion of personal jurisdiction. *Id.*

In this case, defendant Mullins' contention that the sale of hundreds of cars to Delaware dealers constitutes a continuous course of activity in the forum state is factually incorrect. All the elements of the sales took place in Maryland. The nonresident defendant transferred possession and control of the cars in Maryland. He transferred title and received payment in Maryland. Even the phone calls between Mullins and Ahmer were entirely initiated by Mullins, as far as the record shows. The only "presence" by the nonresident defendant in Delaware was the presence of the cars in Delaware while title was temporarily still in his name. However, unlike the nonresident defendant in *LaNuova*, this was not a deliberate presence commercially intended to enhance the marketability of his product or service in Delaware or even to ensure eventual payment for the cars. Rather, it was a fact or custom of the wholesale used car trade to prevent the delay in transferring titles from impeding the turnover of cars. So viewed, this "presence" is insufficient to establish such a persistent course of conduct in Delaware as to justify the assertion of personal jurisdiction.

Mullins' second contention, that the nonresident defendant derived substantial revenues from services, or things used or consumed in the State, similarly fails because the sales in question took place in Maryland. In *Plumb v. Cottle*, D.Del., 492 F.Supp. 1330 (1980), the District Court in applying § 3104(c)(4) found the nonresident manufacturer of an allegedly defective lightning protection system not subject to suit in Delaware because it sold no lightning systems in Delaware, shipped no lightning systems to Delaware, maintained no branch office in Delaware and was not licensed to do business in Delaware. *Id.* at 1334. On the other hand, the Court held that the nonresident seller and installer of the systems that was licensed to do business in Delaware and that had derived $36,000, or 3% of its income, in one year and $21,000, or 2% of its income, in a second year from sales in Delaware was doing business in Delaware, had derived substantial revenue from Delaware and thus came within the terms of subsection (c)(4). *Id.*

A possible alternative interpretation of this clause, however, is suggested in *Fischer v. Hilton*, D.Del., 549 F.Supp. 389 (1982). In *Fischer*, the District Court found that the sale of an allegedly defective truck in Ohio to the plaintiff, a Delaware resident, did not subject the nonresident defendant to personal jurisdiction under subsection (c)(1) where the contract of sale was negotiated and executed in Ohio and the truck was delivered to the plaintiff in Ohio. *Id.* at 391. The plaintiff, however, had also argued that the substantial revenue clause of subsection (c)(4) gave the Delaware courts jurisdiction over any person who, whether in one transaction or many, gains substantial revenue from his dealings with a Delaware resident and that the sale of the truck for $34,000 satisfied that requirement. *Id.* at 391–392. The Court, relying on *Plumb v. Cottle*, 492 F.Supp. at 1330, and *Magid v. Marcal Paper Mills, Inc.*, D.Del., 517 F.Supp. 1125, 1130 (1981) (either substantive volume of business or continuity of operation in Delaware is sufficient under subsection (c)(4)), disagreed

with this contention. *Fischer*, 549 F.Supp. at 391–392. It stated:

> The two preceding clauses of (c)(4) require some pattern of activity. The nonresident must *regularly* do or solicit business or engage in a *persistent* course of conduct. Therefore, given these two clauses, it is logical for this Court to require more than one sale under the substantial revenue clause. [Citation omitted]
>
> . . . .
>
> This Court need not, however, come to a definite conclusion as to the meaning of subsection (c)(4). It is sufficient in this case to state even if one transaction could satisfy subsection (c)(4), [footnote omitted] the sale of one tractor-trailor does not satisfy the substantial revenue requirement. There is left to another day the question of whether a single sale of a much greater magnitude could satisfy subsection (c)(4).

*Id.* at 392.

The analysis of the Court in *Fischer* suggests that more than one sale to a Delaware resident, no matter where the sales took place, would satisfy the substantial revenue clause of subsection (c)(4). This Court, however, declines to adopt this inference drawn from *Fischer* as its interpretation of the statute. Relying instead on *Plumb v. Cottle*, this Court finds that because the nonresident defendant sold no cars in Delaware, there is no showing that the nonresident defendant derived substantial revenue from Delaware to justify the assertion of personal jurisdiction over him. The plaintiff has failed to make a showing that jurisdiction is conferred by 10 *Del.C.* § 3104(c)(4).

## IV. *Conclusion*

Because the plaintiff has not carried his burden of demonstrating the existence of personal jurisdiction over the nonresident defendant under 10 *Del.C.* §§ 3112 or 3104(c)(4), the nonresident defendant's motion to dismiss must be granted and co-defendant Gene Mullins' crossclaim is dismissed. An Order consistent with this Opinion has been entered.

### ORDER

For the reasons set forth in this Court's Opinion entered in this case on this date, it is

ORDERED that the defendant Charles M. Ahmer's Motion to Dismiss this action as to him on the ground of lack of personal jurisdiction is granted, and co-defendant Gene Mullins' cross-claim against Ahmer is similarly dismissed.