**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2254-17T2

M.F.,

       Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES, and ATLANTIC
COUNTY BOARD OF SOCIAL
SERVICES,

       Respondents.

_____

Submitted March 18, 2019 – Decided April 1, 2019

Before Judges Sabatino and Haas.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (Laurie M. Higgins, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

SB2, Inc. (SB2), a Pennsylvania law firm purporting to represent M.F., a deceased Medicaid recipient, has filed a notice of appeal challenging the November 27, 2017 decision of the Division of Medical Assistance and Health Services (the Division) that denied SB2's request that this matter be re-transmitted to the Office of Administrative Law (OAL) for a hearing. We affirm.

On February 19, 2014, M.F. executed a durable power of attorney (POA) designating her grandson V.F. and another grandson "acting either jointly or separately, to be [her] attorneys-in-fact and agents . . . in [her] name and for [her] benefit[.]" Two days later, M.F. became a resident of a nursing home facility.

On March 25, 2014, V.F. filed an application for Medicaid on M.F.'s behalf with the County Welfare Agency (CWA). The CWA denied this application on June 3, 2014. V.F. filed a second application, but the CWA denied it on August 26, 2014 due to a lack of documentation.

At that point, V.F. retained an attorney to assist him in securing Medicaid benefits for M.F. While V.F. was attempting to arrange a meeting with the CWA

to discuss the filing of a third application, the CWA received an October 23, 2014 email from an individual named J.S., who was allegedly an employee of the nursing facility where M.F. lived. The email was sent to B.P., a CWA employee. J.S. wrote that she had spoken to M.F.'s "POA who said that he had an attorney get in touch with [B.P.] regarding the denial letter he received [three] weeks after it was issued[.]" The POA told J.S. that he had scheduled an appointment with the CWA for November 9, 2014, and was told that M.F.'s "application will go retro-active [sic] to March 2014 (date of original application)." J.S. asked B.P. to "verify" that this information was "correct[.]"

That same day, B.P. sent a reply email to J.S. B.P. wrote:

> There is an appointment on the 5th. (The 9th is a Sunday). If the applicant is eligible, the farthest we can go retroactive is [three] months. It will be impossible to go back to March.
>
> Also, I did see the Designation of Authorized Representative [(DAR) form] you sent over for her. I want to be very clear here. We will deal with one person. If you are to be the Authorized Rep[resentative], then you should be the one to come in and do the application, etc. The Authorized Rep[resentative] is our sole point of contact. It is not a method in order to be kept in the loop on what is happening in the case. Please decide if you want the POA to do the work, or yourself, but it needs to be one or the other, not both.

A-2254-17T2

The parties agree that B.P. was referring to a DAR form that M.F. allegedly signed on September 24, 2014.[1] "The federal Medicaid regulations permit individuals to designate others to assist them in applying for benefits or otherwise communicating with the Medicaid agency." E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 193 (App. Div. 2013) (citing 42 C.F.R. § 435.907(a)). The form that is signed by the potential Medicaid recipient seeks to protect applicants by assuring that they have voluntarily designated a representative in connection with their Medicaid claim, and making sure they know that their personal information may be accessed by, and shared with, their DAR. Id. at 195.

However, the Division's regulations also make clear that the CWA will only notify "the applicant" in writing of the agency's decision concerning an application. N.J.A.C. 10:71-8.3. The regulations define "applicant" as "the aged, disabled or blind individual [on whose behalf the Medicaid application is filed] or his/her authorized agent who executes the formal written application." N.J.A.C. 10:71-2.1 (emphasis added). Thus, in keeping with these provisions, B.P. specifically advised J.S. that the CWA would notify her of any action on

---

[1] Significantly, nothing in this form acted to revoke the earlier POA that M.F. previously granted to V.F., which remained in full force and effect.

A-2254-17T2

M.F.'s application only if J.S. submitted the Medicaid application on M.F.'s behalf.

That did not occur. In fact, J.S. never replied to B.P.'s email, and was never heard from again in connection with the proceedings that followed.

Instead, on December 9, 2014, V.F., as M.F.'s POA, filed a third application for Medicaid on her behalf. The CWA approved this application on November 17, 2015 and, after imposing a 327-day transfer penalty in the amount of $102,434 pursuant to N.J.A.C. 10:71-4.10, granted M.F. Medicaid benefits retroactive to July 25, 2015. In accordance with N.J.A.C. 10:71-8.3 and N.J.A.C. 10:71-2.1, the CWA sent written notice of the decision to V.F., as M.F.'s POA and as the only individual who submitted the application on her behalf.

The notice advised V.F. that he had the right to request a hearing within twenty days to contest the CWA's determination. V.F. filed a timely request for a hearing challenging the transfer penalty, and the matter was transmitted to the OAL. V.F. did not appear at the hearing scheduled on February 16, 2016, and the matter was accordingly dismissed. M.F. passed away in December 2016.

On October 25, 2017, twenty months after the OAL matter was closed, and ten months after M.F. died, an attorney employed by SB2 sent a motion to

the Division asking it to re-transmit the matter to the OAL for a hearing on the transfer penalty imposed in November 2015. In an accompanying certification, the attorney stated that SB2 "has been retained by petitioner M.F. concerning the above-referenced appeal."[2] The attorney argued that the CWA erred by failing to send notice to J.S. of its decision on the application V.F. submitted on M.F.'s behalf, which she alleged deprived M.F. of her right to contest the CWA's decision.

On November 27, 2017, the Division denied SB2's motion. In its written decision, the Division noted that M.F. had passed away in December 2016 and, therefore, it was questionable whether M.F. had ever actually retained the law firm. Even if she had done so prior to her death, the Division correctly noted that M.F.'s death "would end any representation" by SB2, especially since the law firm did not claim that it represented M.F.'s estate. Cf. R. 4:34-1(b) (stating that if a party to an action dies and the claim is not extinguished, decedent's successors shall be substituted for the deceased party).

---

[2] SB2 incorrectly states in its appellate brief that "M.F.'s DAR, [J.S.] filed" the October 25, 2017 motion. However, SB2's attorney specifically claimed in her certification that M.F., who had been dead for ten months, had retained the firm to bring the motion on her behalf. The attorney did not provide any certification from J.S. and, as stated above, J.S. did not take any action on behalf of M.F. after her October 2014 email.

A-2254-17T2

In addition, the Division found that the CWA properly notified V.F., as M.F.'s POA, of its decision concerning M.F.'s Medicaid application, including his right to request a hearing on M.F.'s behalf. V.F. took advantage of this opportunity and later, again acting as her POA, decided not to pursue the matter. Thus, contrary to SB2's contention, M.F. had the full opportunity to challenge the CWA's action. This appeal followed.

On appeal, SB2 again argues that the CWA incorrectly failed to provide M.F.'s designated representative with notice of its action and, therefore, she was unable to contest the agency's determination. We have considered the law firm's contentions on appeal in light of the record and applicable legal principles and conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the Division in its written opinion, and add the following brief comments.

Our review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J.

571, 580 (1980)). In determining whether an agency's action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> "(1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of the legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors."
>
> [W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 35-36 (App. Div. 2007) (quoting Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (second alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)).

Applying these principles, we discern no basis for disturbing the Division's well-reasoned determination. First, it is questionable whether the DAR form that J.S. submitted was even valid in light of the prior POA M.F. granted to V.F. 42 C.F.R. § 435.923(c) states:

> The power to act as an authorized representative is valid until the applicant or beneficiary modifies the authorization or notifies the agency that the representative is no longer authorized to act on his or her behalf, or the authorized representative informs the agency that he or she no longer is acting in such capacity, or there is a change in the legal authority upon which the individual or organization's authority was based. Such notice must be in accordance with [42 C.F.R. § 435.923(f)] and should include the applicant or authorized representative's signature as appropriate.

A DAR is analogous to a limited power of attorney. See N.J.S.A. 46:2B-8.2 ("A power of attorney is a written instrument by which an individual known as the principal authorizes another individual . . . known as attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent"). "A power of attorney must be in writing, duly signed and acknowledged in the manner set forth in [N.J.S.A. 46:14-21.1]." N.J.S.A. 46:2B-8.9. The acknowledgment must include the "date on which the acknowledgment was taken." N.J.S.A. 46:14-2.1(c)(5). "Unless expressly so provided, the subsequent

execution of another power of attorney does not revoke a power of attorney." N.J.S.A. 46:2B-8.10.

Here, M.F. gave a durable power of attorney to V.F. on February 19, 2014. The POA was never revoked in accordance with its terms or with the revocation requirements for a DAR under 42 C.F.R. § 435.923(c). Accordingly, the DAR form that M.F. allegedly executed on September 24, 2014 could not supersede V.F.'s POA, which continued in full force and effect. Therefore, the CWA properly notified V.F., and only V.F., of its decision on M.F.'s Medicaid application.

As previously discussed, the Division's regulations also make clear that only the potential Medicaid recipient, or his or her "authorized agent who executes the formal written application" on her behalf, is entitled to receive written notice of any eligibility determinations made by the CWA. See N.J.A.C. 10:71-8.3; N.J.A.C. 10:71-2.1. Again, J.S. completely disappeared after the CWA informed her on October 23, 2014 that if she wanted to receive notification of the progress of M.F.'s application, she had to be the designated representative who submitted the application on M.F.'s behalf. V.F., who continued to assist his grandmother on each of her applications, filed the final application on her behalf, received notice of the CWA's decision, requested a hearing concerning

it, and then decided not to pursue it. Under these circumstances, M.F. received proper written notice of the hearing, and all the process due to her.

Even assuming that J.S. had a valid DAR, however, it terminated upon M.F.'s death in December 2016, long before SB2 got involved in the case. See N.J.S.A. 46:2B-8.5(a) (stating that "[t]he death of a principal who executed a written power of attorney, durable or otherwise, does not revoke or terminate the agency as to the attorney-in-fact who, without actual knowledge of the death of the principal, acts in good faith under the power"). If as SB2 alleges, J.S. worked at the nursing facility where M.F. resided, she obviously would have known if she was still working there that M.F. had died, thus terminating her DAR.[3] Therefore, the Division properly denied SB2's request to re-transmit the matter to the OAL for a hearing regardless of whether it had been retained by either M.F. or J.S.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] "As Vice Chancellor Bigelow said [over seventy years ago], 'An earthly court has no jurisdiction over the dead.'" Stroman v. Brown, 194 N.J. Super. 307, 313 (1984) (quoting In re Admiral Sampson B & L Ass'n, 136 N.J. Eq. 292, 293 (Ch. 1945)).

A-2254-17T2